### The PEOPLE of the State of Colorado, Complainant,

v.

### Jack Samuel SILVER, Attorney–Respondent.

### No. 96SA269.

Supreme Court of Colorado, En Banc.

Sept. 23, 1996.

**160**

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Jay P.K. Kenney, Denver, for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline proceeding, Jack Samuel Silver, entered into a stipulation, agreement and conditional admission of misconduct with the assistant disciplinary counsel. C.R.C.P. 241.18. The conditional admission recommended that the respondent be suspended from the practice of law for one year and one day. An inquiry panel of the supreme court grievance committee approved the conditional admission, including the recommended discipline. We accept the conditional admission and the inquiry panel's recommendation.

I

The respondent was admitted to practice law in Colorado in 1973. The conditional admission states that Dennis King and his wife, Joann King, own certain property consisting of a restaurant and adjacent motel located in Idaho Springs, Colorado. Dennis King purchased the property from family members in 1990. He sought to refinance the debt encumbering the property, and was referred to Financial Capital Equities, Inc.

(FCE) in January 1991. FCE was organized by the respondent's wife and his brother-in-law. At the times relevant to this proceeding, the respondent was FCE's president, principal employee, and lawyer. King learned that the respondent was a lawyer when he went to the respondent's office in April 1991.

In September 1991, the Kings entered into a loan agreement with FCE. FCE agreed to loan Dennis King $195,000 at an interest rate of 17% per annum. The respondent signed the agreement as FCE's president. This first loan was ultimately closed on September 12, 1991. The respondent's law firm, Silver, Robinson, Tobin & Schuyler (Silver Robinson) received $1,000 as a legal fee for the respondent's work in preparing the loan documents and for advising FCE during the negotiations for the first loan.

The title company insuring FCE with respect to King's property required that the sum of $25,600 be held in escrow to cover a lien on the property held by Baker's Interiors. At the closing, it was agreed that the respondent would try to negotiate a settlement of Baker's lien on behalf of Dennis King, his mother, and Joann King. Acting as the Kings' lawyer, the respondent did negotiate a settlement of the lien and the Kings paid him $1,249.15 as attorney fees.

From August 1991 through May 1993, the respondent's law firm billed FCE $9,700 for the respondent's work concerning the first loan. Among other things, the respondent looked into insurance problems on the property, sent routine late payment notices to the Kings when they failed to make timely payments, and resolved an issue involving a deed of trust on the property.

Beginning in early 1992, the respondent and his law firm performed legal services for Dennis King, his mother, and Joann King in matters other than the Baker's lien matter. These additional matters included: (1) one of the other partners in Silver Robinson represented Dennis King's mother in a suit to quiet title to an aspect of the property; (2) the respondent represented the Kings in drafting their wills and advised them about estate planning; (3) the respondent advised

the Kings regarding how they should structure their business enterprises; (4) the respondent prepared and filed incorporation papers for the Kings; (5) the respondent prepared partnership papers for the Kings; (6) the respondent represented the Kings and the King Family Partnership in September 1993 in negotiating the terms of a $310,000 loan from GoldenBank, N.A., guaranteed by the Small Business Administration; and (7) the respondent represented Dennis King and the King corporation in negotiations with a sign company in late 1993.

When the respondent undertook to represent the Kings, he never informed them in writing of the conflicts that existed by virtue of his role as the lawyer for FCE, as the president of FCE, and as their lawyer. Moreover, he never obtained the Kings' written consent to continue the conflicting representations as he was required to do on January 1, 1993, the effective date of R.P.C. 1.8 of the Rules of Professional Conduct, which rule contains the following provisions:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted *in writing* to the client in a manner which can be reasonably understood by the client;

(2) the client is informed that use of independent counsel may be advisable and is given a reasonable opportunity to seek the advice of such independent counsel in the transaction; and

(3) the client consents in writing thereto.[1]

(Emphasis added.)

On May 17, 1993, Dennis King borrowed an additional $40,000 from FCE, which was a construction loan to be used to make improvements to the property. The respondent prepared the construction loan documents and signed them as FCE's president. The respondent was paid $850 in attorney fees for preparing the loan documents. The Kings did not consider the respondent to be their lawyer in this transaction.

The respondent acted as the disburser of the loan proceeds. He put the loan proceeds in a checking account and thereafter made nine disbursements. Two of them were for attorney fees that the respondent paid to his law firm. The first, in the amount of $2,399.58, was dated June 2, 1993, and was credited to FCE's outstanding balance at Silver Robinson. The second, for $5,161.15, was dated July 8, 1993, and was credited to six of Dennis King's outstanding balances at the law firm. The respondent paid the balance of the loan proceeds to Dennis King, various contractors, and the sign company. Dennis King maintains that the respondent never told him about or asked his permission to pay the fees to Silver Robinson out of the construction loan proceeds. The respondent maintains that he did have King's permission. In any event, the respondent did not notify Dennis King in writing before making the disbursements.

The $310,000 borrowed by the Kings and the King Family Partnership from Golden-Bank in September 1993 and guaranteed by the Small Business Administration was used to pay off the first loan and the construction loan made by FCE. The respondent represented the Kings and the partnership in this transaction. At the same time, the respondent served as the attorney for FCE and was its president and only employee. At the closing in September 1993, the respondent supplied a GoldenBank officer with information concerning the amounts necessary to pay off the FCE loans. The respondent did not inform the officer that the Kings had made about ten late monthly payments on the FCE loans. However, the officer did not ask whether the Kings had ever been delinquent on any payments.

---

1. Although the respondent maintains that he did inform the Kings of the various conflicts, he nevertheless has stipulated that his conduct violated DR 5–105(A), as well as R.P.C. 1.7(b) and R.P.C. 1.8(a). The Kings maintain that the respondent never informed them at any time about any conflicts of interest.

The payoff statements the respondent provided had line entries for attorney fees, default interest, and late payment fees. The respondent left these lines blank. He did not disclose that the payoff amounts included attorney fees, default interest, and late payment fees incurred by the Kings.

The respondent's law firm billed FCE an additional $7,270.50 during the period May 24 to September 27, 1993. The bills were for legal work the respondent performed for FCE in connection with the loans to the Kings, negotiations with GoldenBank about the SBA guaranteed loan, the dispute over a neon sign that King had ordered from the sign company, and King's request to locate and hire a new accountant. King did not receive copies of the respondent's legal bills that were directed to FCE.

On November 3, 1993, FCE made a third loan to the Kings, in the amount of $80,000. The respondent's law firm received $2,275 from the proceeds of this loan.

The Kings filed an action against FCE, Silver Robinson, and the respondent on December 21, 1994. The parties executed a settlement agreement in the fall of 1995, which was funded in January 1996. Under the agreement, Silver Robinson's malpractice carrier paid the Kings $25,000 and FCE agreed to alter the terms of the third loan by reducing the principal amount from $80,000 to $35,000, lowering the interest rate, reducing the monthly payments, and extending the maturity date.

The respondent has admitted that the foregoing conduct violated DR 5–105(A) (a lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be affected by the acceptance of the proffered employment, or which would be likely to involve the lawyer in representing differing interests, unless it is obvious the lawyer can represent the interests of each client, and both clients consent after full disclosure). After the effective date of the Rules of Professional Conduct, his conduct violated R.P.C. 1.7(b) (a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests); and R.P.C. 1.8(a) (a lawyer shall not enter into a prohibited business transaction with a client).[2]

## II

■ The inquiry panel approved the conditional admission and the recommendation that the respondent be suspended for one year and one day. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ) provides that, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA *Standards* 4.32. As the complainant points out, the respondent's conduct must be considered to be knowing because he received a private censure for violating DR 5–105(A), one of the disciplinary rules implicated in this case, only a short time before the respondent began to act as the Kings' attorney. Previous discipline is an aggravating factor with respect to determining the proper disciplinary sanction. ABA *Standards* 9.22(a). Furthermore, the conflicts of interest in this case were obvious. The respondent represented several persons, entities, and interests in business transactions as a lawyer and as a participant.

In addition to the prior discipline, the following aggravating factors are present: a pattern of misconduct, *id.* at 9.22(c); multiple offenses, *id.* at 9.22(d); and substantial experience in the practice of law, *id.* at 9.22(i). The only mitigating factor present is the respondent's cooperation in these proceedings. *Id.* at 9.32(e).

Given the seriousness and frequency of the respondent's misconduct in conjunction with the factors in mitigation and aggravation, we have concluded that suspension for one year

---

**2.** The assistant disciplinary counsel has stipulated that there is not clear and convincing evidence that the respondent also engaged in misrepresentation, dishonesty, or failure to communicate the fee agreement clearly to King, as charged in the formal complaint.

and one day is appropriate. Accordingly, we accept the conditional admission and the inquiry panel's recommendation.

### III

It is hereby ordered that Jack Samuel Silver be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. It is also ordered that the respondent pay the costs of this proceeding in the amount of $797.09 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600—17th Street, Suite 920–S, Denver, Colorado 80202–5435.