**The PEOPLE of the State of Colorado, Complainant,**

v.

**Patrick W. BUCKINGHAM, Attorney–Respondent.**

**No. 97SA146.**

Supreme Court of Colorado,
En Banc.

June 2, 1997.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Deputy Disciplinary Counsel, Denver, for Complainant.

Frederick W. Newall, Colorado Springs, for Attorney–Respondent.

PER CURIAM.

The respondent and the assistant disciplinary counsel executed a stipulation, agreement, and conditional admission of misconduct pursuant to C.R.C.P. 241.18. The parties agreed in the conditional admission to discipline in the range of a public censure to a thirty-day suspension from the practice of law. In approving the conditional admission, an inquiry panel of the supreme court grievance committee recommended that the respondent be publicly censured. We accept the conditional admission and the panel's recommendation.

I.

The respondent was admitted to practice law in this state in 1979. The conditional

admission provides as follows. In 1985, Veronica Flannigan and her husband, together with Ruth and Robert Swaney, and Shirley Jo Anne Dietrich, now known as Shirley Jo Anne White (referred to collectively as "the investors"), purchased a mobile home park from William and Betty Thompson. The investors assumed the balance of the Thompsons' note to Veryl and Cleta Marshall, in the amount of $266,781.74.

The investors sold the property in 1988 to James and Mary Anne Sorrentino. The Marshalls agreed to the sale so long as the Thompsons and the investors remained jointly and severally liable along with the Sorrentinos for payment of the note. The original Thompson note to the Marshalls became essentially a wraparound agreement, and the note continued to be secured by a first deed of trust.

When the Sorrentinos began missing payments, the Marshalls declared the note to be in default in February 1991. The Marshalls did not want the property back, however, and they made it clear to the investors that they intended to file an action to collect on the note rather than foreclose on the mobile home park. In March 1991, the investors reached a tentative settlement with the Marshalls whereby they would pay the Marshalls $100,000 in cash and execute an amortized note on the balance. According to the stipulation, $224,000 remained on the note to the Marshalls.

At this point, the investors met with the respondent who agreed to represent all of them. The deputy disciplinary counsel indicates that the evidence would show that the respondent advised the parties that there might be a conflict among the various investors. The Sorrentinos hired separate counsel.

The investors explained to the respondent that they wanted to settle the matter and that they had all agreed to be equally responsible for the payment of the settlement that had been worked out with the Marshalls. The investors expected the respondent to finalize the settlement agreement with the Marshalls and to negotiate with the Sorrentinos. The conditional admission states that both the respondent and the lawyer for the Marshalls believed that the other was drafting the agreement. In any event, the respondent did not prepare the agreement because no agreement could be reached with the Sorrentinos. The Sorrentinos would not transfer the property without compensation and the investors were unwilling to pay them anything for it.

The Marshalls filed an action to collect on the note on June 21, 1991. The respondent filed an answer to the complaint and a counterclaim, as well as a crossclaim against the Sorrentinos. On December 16, 1991, the Marshalls filed a motion for summary judgment. The respondent's response was late and did not include any affidavits. The court granted the motion for summary judgment on January 22, 1992.

The Sorrentinos had filed for bankruptcy on January 13, 1992, and the title to the property was being held by the bankruptcy trustee. Upon the respondent's advice, all of the investors except the Flannigans filed for bankruptcy. Despite the respondent's advice, the Flannigans elected not to file. They therefore became solely liable on the judgment of $311,827.49, including attorney fees and costs. The investors' counterclaims against the Marshalls survived the summary judgment and were set for trial in March 1992. After two settings were vacated, however, the respondent did not reset the counterclaims for trial because he did not believe it to be in the Flannigans' interests to proceed. He did not explain this to the Flannigans, however. When the counterclaims were later dismissed without prejudice for failure to file a status report, the respondent did not fully explain the basis for the dismissal to the Flannigans.

Although the Flannigans discussed buying the property from the trustee, their $500 offer was rejected by the trustee as too low and they made no other offer. In December 1992, the trustee approved the sale of the property to the Marshalls for $2,500.

In January 1994, the respondent filed a motion requesting that the judgment be deemed satisfied by the transfer of the property to the Marshalls. The court gave the Flannigans a credit for $222,636.83, the prin-

cipal amount of the note. The Flannigans subsequently obtained another lawyer who settled with the Marshalls in July 1996.

The respondent has stipulated that his conduct, which occurred both before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 6–101(A)(3) and Colo. RPC 1.3 (neglecting a legal matter); and Colo. RPC 1.4(a) (failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation). The parties also stipulated that, at least from the time of the entry of judgment against the investors in March 1992 and the decision of some, but not all, of the investors to take the respondent's advice and to file for bankruptcy in April 1992, the respondent's continued representation of all of the investors violated DR 5–105(B) (continuing multiple employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing different interests). As the deputy disciplinary counsel states in his analysis of discipline:

> If a conflict among the [investors] didn't exist prior to the two members filing bankruptcy, it did when they filed. Potentially the remaining group members had recourse against the other members or vice versa. The conflict occurred when the respondent could not act on the individual and disparate interests of some of the [investors] without harming others. Although the respondent made some disclosure to the [investors] at the outset about the perils of his multiple representation, when it became obvious that he was representing differing interests, he failed to withdraw or alert the clients that a conflict existed.

## II.

The respondent has agreed to accept discipline in the range of a public censure to a thirty-day suspension from the practice of law. The inquiry panel recommended that the respondent receive a public censure.

The complainant represents that "[u]nder the facts and circumstances of this case, as well as the extensive discovery conducted pretrial, a public censure would not be unduly lenient."

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, public censure is warranted if the lawyer is "negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." *Id.* at 4.33; *see People v. Fritze*, 926 P.2d 574, 576 (Colo.1996) (lawyer publicly censured for failing to recognize that a conflict existed in representing homeowners, general contractor, and bank in an action to foreclose subcontractor's mechanics' lien); *People v. Farry*, 909 P.2d 1096, 1098 (Colo. 1996) (lawyer publicly censured when conflicting representations were entered into negligently rather than intentionally); *People v. Vsetecka*, 893 P.2d 1309, 1311 (Colo.1995) (lawyer publicly censured for representing two clients after it had become clear that a conflict existed).

On the other hand, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA *Standards* 4.32; *see People v. Silver*, 924 P.2d 159, 162 (Colo.1996) (lawyer suspended for one year and one day where conflicts of interest were obvious when the lawyer represented more than one side in business transactions as a lawyer and as a participant; and had been previously disciplined for similar misconduct); *People v. Miller*, 913 P.2d 23, 27 (Colo.1996) (lawyer suspended for one year and one day for failing to disclose obvious conflicts of interests and causing substantial harm).

In aggravation, the respondent received a letter of admonition in 1987 for neglecting a legal matter, *see* ABA *Standards* 9.22(a) (prior discipline is an aggravating factor for purposes of determining the appropriate discipline); and he has substantial experience in

the practice of law, *see id.* at 9.22(i). Mitigating factors include the respondent's cooperation with the Office of Disciplinary Counsel, *see id.* at 9.32(e); and his expression of remorse for the misconduct, *see id.* at 9.32(*l*).

In *People v. Vsetecka*, 893 P.2d 1309, 1311 (Colo.1995), we publicly censured a lawyer for, among other things, representing two clients after it had become clear that a conflict existed. We determined that a public censure, rather than a suspension, was appropriate given the absence of any discipline in the respondent's twenty-two year legal career. *Id.* Given that the respondent in this case has practiced for eighteen years, and although he received an admonition ten years ago, we agree with the deputy disciplinary counsel that a public censure would not be unduly lenient in this case. Accordingly, we accept the conditional admission and the inquiry panel's recommendation. Two members of the court, however, would have imposed more serious discipline.

### III.

The respondent, Patrick W. Buckingham, is hereby publicly censured. It is further ordered that the respondent pay the costs of this proceeding in the amount of $1,275.55 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.