Henry N. Mulvihill, Parker, for Attorney–Respondent.

**The PEOPLE of the State of Colorado, Complainant,**

v.

**Frederick L. GINSBERG, Attorney–Respondent.**

**No. 98SA264.**

Supreme Court of Colorado, En Banc.

Oct. 19, 1998.

Rehearing Denied Dec. 1, 1998.

### PER CURIAM.

An inquiry panel of the grievance committee approved a stipulation, agreement, and conditional admission of misconduct executed by the respondent, Frederick L. Ginsberg, and the complainant. See C.R.C.P. 241.18. The conditional admission recommended that Ginsberg be suspended for ninety days. We accept the conditional admission and suspend the respondent for ninety days.

### I.

Frederick L. Ginsberg was admitted to practice law in Colorado in 1965. The conditional admission provides that Rae Spears was a long-time client of Ginsberg and that she had worked for him in 1977. Spears owned Carlton Homes, Inc., a home building

---

company. Ginsberg's ethical problems arose from a series of loans he was involved in with Spears.

In April 1992, Spears needed $50,000 to purchase a particular lot. Ginsberg initially arranged for a loan from a trust and from a second private lender, who was one of Ginsberg's clients. Because the trust withdrew from the deal, Ginsberg agreed in August 1992 to lend Spears $25,000. The remaining $25,000 came from Ginsberg's other client. Ginsberg prepared a promissory note for Spears to execute with an interest rate of 30%, which was an excessive rate at the time. The loan was to be repaid by May 9, 1993, and the loan was secured by a deed of trust covering the property to be purchased.

Because Spears did not pay the note when it was due, Ginsberg prepared an extension agreement dated December 14, 1993, for her to sign. By this time, Spears was consulting with other counsel over business matters, litigation, and the loan in question. The extension agreement called for Spears to acknowledge that she owed Ginsberg over $20,000 in attorney fees, an amount she thought was too high. The agreement further provided that Spears and Carlton Homes would waive any claims against Ginsberg arising from the original promissory note or his representation of Spears and Carlton Homes in certain unrelated ongoing litigation. Finally, in addition to the extended note, there would be two collateral promissory notes for Spears to execute, one for Ginsberg's fees, and the other for a future payment to the other lender. Because of the provisions for the release of claims and the amount of Ginsberg's fees, Spears at first refused to sign the extension agreement. Unable to obtain other financing, however, she signed a revised extension agreement dated December 21, 1993. This agreement also contained the release of claims against Ginsberg, but the amount of the attorney fees Spears owed Ginsberg was reduced to $14,500.

Ginsberg has admitted that he violated DR 5–104(A) by entering into a prohibited business transaction with his client in regard to his August 18, 1992, loan to Spears, and that he failed to fully disclose their differing interests. DR 5–104(A) provided that "[a] lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his [or her] professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

Ginsberg's preparation of the extension agreement in 1993, after the effective date of the Rules of Professional Conduct, violated Colo. RPC 1.7(b), which states that "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests" unless certain exceptions exist which were not satisfied in this case. Ginsberg's representation of Spears when he prepared the initial extension agreement was materially limited by the interests of the other lender, who was also his client, and by his own interests as a lender. Moreover, Ginsberg's inclusion of the release of claims against him in both the initial and the second extension agreements violated Colo. RPC 1.8(h) (making an agreement prospectively limiting the lawyer's liability to a client for malpractice).

On the same day that she entered into the $50,000 loan, Spears entered into a $30,000 loan. This time the lenders were Ginsberg's other client and the trust. Ginsberg believed, incorrectly as it turned out, that the trust was associated with a close relative of his. Although he arranged for the loan, Ginsberg was not a party to it. Finally, Ginsberg arranged for a $10,000 loan to Spears from the trust and he prepared a promissory note dated June 15, 1993. Spears paid this loan when it was due. Ginsberg has stipulated that by brokering these loans he violated DR 5–101(A) (accepting employment when the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests).[1]

---

1. The conditional admission states that DR 5–101(A) was violated. When the loan involving the June 1993 promissory note was entered into, the Rules of Professional Conduct, not the Code of Professional Responsibility, governed. Noth-

## II.

Ginsberg has consented to a ninety-day suspension. The inquiry panel approved the conditional admission and the recommended discipline. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), provides that a period of suspension is appropriate in this case. *See* ABA *Standards* 4.32 (in the absence of aggravating or mitigating factors, suspension is generally appropriate when a lawyer does not fully disclose a conflict of interest and causes injury or potential injury to a client).

In his analysis of discipline, the assistant disciplinary counsel represents that Ginsberg's misconduct caused Spears little actual damage aside from the excessive 30% interest rate where he was one of the lenders. However, at least the potential for additional harm was present.

The aggravating factors in this case include Ginsberg's prior discipline consisting of a letter of admonition in 1972 and a private censure in 1997. *See id.* at 9.22(a). The importance of this factor is lessened by the fact that the prior offenses occurred over a thirty-three year legal career. Additional aggravating factors include a selfish motive, *see id.* at 9.22(b); a pattern of misconduct, *see id.* at 9.22(c); the presence of multiple offenses, *see id.* at 9.22(d); and substantial experience in the practice of law, *see id.* at 9.22(i). Mitigating factors include Ginsberg's full and free disclosure in this disciplinary proceeding, *see id.* at 9.32(e), and the presence of remorse, *see id.* at 9.32(l ).

Taking all of these factors into account, together with the seriousness of the misconduct, we conclude that a suspension for ninety days is appropriate. Accordingly, we accept the conditional admission and the inquiry panel's recommendation.

## III.

It is hereby ordered that Frederick L. Ginsberg be suspended from the practice of law for ninety days, effective thirty days after the issuance of this opinion. It is further ordered that Ginsberg pay the costs of this proceeding in the amount of $606.38 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 300 South, Denver, Colorado 80202–5435.

ing turns on this distinction, however, so for the purposes of this opinion we will disregard it.

The assistant disciplinary counsel also indicates in the conditional admission that various additional disciplinary violations that were charged in the formal complaint cannot be proven by clear and convincing evidence and he requests that they be dismissed if the conditional admission is accepted.