**In the Matter of John A. CIMINO, Attorney–Respondent.**

**No. 99SA84.**

Supreme Court of Colorado,
En Banc.

May 1, 2000.

John S. Gleason, Attorney Regulation Counsel, James Sudler, Assistant Regulation Counsel, Denver, Colorado, for Complainant.

Terry Tomsick, Denver, Colorado, for Attorney–Respondent.

PER CURIAM.

In this case, we must determine the appropriate level of discipline to impose on a lawyer who entered into a prohibited business transaction with a corporation, while simultaneously representing the corporation. A hearing panel of the former grievance committee[1] approved the findings and the rec-

1. By order of the supreme court dated June 30, 1998, effective January 1, 1999, the grievance committee was superseded by the reorganization of the attorney regulation system. The same order provided: "All attorney discipline cases in which trial has occurred prior to January 1, 1999 before a Hearing Board ... shall be reviewed by the applicable Hearing Panel at a final meeting

ommendation of a hearing board that the respondent, John A. Cimino, be suspended for sixty days, be required to attend an ethics seminar, and pay the costs of the proceeding. Cimino excepted to the panel's and board's findings and recommendations. We accept the findings and most of the recommendations, but find that a suspension for thirty days is adequate. We therefore order that Cimino be suspended for thirty days, attend an ethics seminar, and pay the costs of the proceeding, including the complainant's expert witness's fees.

## I.

John A. Cimino was admitted to practice law in this state in 1984. We derive the following facts from the hearing board's findings and from undisputed portions of the record.

In early 1994, Cimino and three other men, Daniel Bloom, Russell Woodman, and Alvin Trautman, formed a new corporation called Colorado Futon Manufacturing, Inc. Each person invested $4800 in return for stock in the corporation. In early March 1994, Cimino, Woodman, and Trautman each loaned the corporation $20,200. Bloom loaned it $19,-400, partly in materials.

Cimino was the only lawyer among the shareholders and he filed the corporation's articles of incorporation. Until his resignation in March 1995, he served as a director of the corporation, as well as its secretary and registered agent for service.

On March 12, 1994, the new board of directors authorized Cimino to prepare the corporate minutes and the promissory notes for the loans to the corporation set out above. The notes were to bear 12% interest. By letter dated March 14, 1994, Cimino sent loan amortization schedules to Woodman, the president of the new corporation. The schedules indicated that monthly payments of $670 would be made to the shareholder lenders beginning May 1, 1994. It also stated that, as soon as they were prepared, Cimino would forward the corporate minutes

authorizing the loans and the promissory notes evidencing the loans. Copies were sent to the other shareholders. In the letter, Cimino referred to himself as the "corporate counsel for Colorado Futon Manufacturing Company." The letter continued: "As everyone knows, I do not represent any individual shareholder regarding this transaction. Separate counsel should be obtained, if needed by anyone." The hearing board concluded that in March 1994, Cimino did not adequately advise the other shareholders or corporate officers to obtain independent counsel, did not notify them of the conflicts of interest in his being both corporate counsel as well as a creditor of the corporation, and did not obtain the other shareholders' written consent to waive the conflicts. The four shareholder-lenders received only two payments each pursuant to the schedule.

Cimino did not prepare the promissory notes or the minutes of the corporation authorizing the debt for the president to sign until February 1995. Woodman signed the notes on February 24, 1995. The shareholders signed the minutes between February 17 and 24, 1995.

On February 24, 1995, Cimino filed an action against Daniel Bloom in the Arapahoe County District Court alleging fraud, negligent misrepresentation, violation of the state securities act, and breach of contract. According to the complaint, all of the claims arose from false representations that Bloom made to Cimino to induce him to join and lend money to the futon manufacturing corporation.

Cimino resigned as a director of the corporation, and its agent for service of process on March 6, 1995. Less than three weeks later, Cimino sued the corporation for default on the promissory note to him. After being consolidated, the two cases were settled, with the corporation agreeing to pay Cimino $18,-000, in monthly payments.

The hearing board concluded that: (1) Cimino had an attorney-client relationship with the corporation; and (2) Cimino's conduct violated Colo. RPC 1.7(b) (representing

to be held in 1999...." Order re Reorganization of the Attorney Regulation System (Colo. June 30, 1998), *reprinted in* 12 C.R.S. at 605

(1999). This case was tried on November 3, 1998, and was reviewed by the hearing panel on February 20, 1999.

a client when the representation may be adverse to the lawyer's own interests), and 1.8(a) (entering into a prohibited business transaction with a client). The board further found that Cimino harmed the corporation by: (1) failing to prepare the corporate minutes and the promissory notes from the corporation to the lenders for almost a year; (2) preparing a promissory note in March 1995 from the corporation to himself, but dated March 1994, that was in default when he prepared it and when it was signed by the president on behalf of the corporation; (3) resigning as director and registered agent of the corporation less than three weeks after the notes were signed, and then suing the corporation on his note within another three weeks; (4) receiving more on his promissory note than any of the other lenders received on theirs; and (5) requiring the corporation to hire a lawyer to defend itself against his lawsuit on the note.

## II.

Cimino excepted to the findings and recommendations of the hearing board and panel. He raises four main issues in his opening brief: (1) his conduct caused no actual injury to the corporation and the hearing board's finding to the contrary is clearly erroneous; (2) the hearing board failed to accord due regard to his state of mind at the time of the misconduct; (3) the board erred when it assessed the total amount of the complainant's expert witness's fees against him; and (4) the recommendation of discipline is excessive.[2]

In our analysis below, we first determine that the presumptive sanction for Cimino's misconduct is at least a short period of suspension. Second, we look at whether the hearing board erred when it failed to take into account the stress that Cimino was under at the time of his misconduct. We find that it was error, but that the error was harmless. Next, we determine that, under the circumstances of the case, a thirty-day suspension is adequate. Finally, we conclude

that Cimino should be responsible for the full amount of the complainant's expert witness fees.

### A. Presumptive Level of Discipline

■ Cimino first asserts that his conduct caused no actual harm to the corporation. Second, he claims that his state of mind at the time of the misconduct was negligent rather than intentional, as he did not realize that an attorney-client relationship had arisen between the corporation and him, and did not perceive the conflict of interest until almost the very end of the relationship. The presence or absence of injury and the lawyer's mental state are important factors for determining the proper level of discipline.

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992), in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer *knows* of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and *causes injury or potential injury* to a client." ABA *Standards, supra*, at 4.32 (emphasis added); *see also In re Cohen*, No. 97SA211, —— P.3d ——, —— – ——, 1999 WL 711853, at **6–7 (Colo. Sept. 13, 1999) (suspending lawyer for ninety days for representing conflicting interests); *In re Quiat*, 979 P.2d 1029, 1042 (Colo.1999) (knowingly representing adverse interests in bankruptcy case warranted three-month suspension from the practice of law).

On the other hand, a public censure is the presumed sanction if the lawyer is at most "negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." ABA *Standards, supra*, at 4.33; *see also People v. Fritze*, 926 P.2d 574, 576 (Colo.1996) (representing conflicting interests through negligence warrants public censure).

2. Cimino also points out that the hearing board's report seemingly characterizes his full and free disclosure and his remorse as aggravating, rather than mitigating factors for the purpose of determining the appropriate level of discipline. As

Cimino recognizes, this characterization is the result of a scrivener's error rather than a legal error. The board clearly intended these as mitigating factors.

We need not reach the issue of whether the hearing board's findings of actual injury are correct for the purpose of analyzing the level of discipline, however. The absence of injury does not negate the violations of Colo. RPC 1.7(b) or 1.8(a). Cimino alleges that under the specific facts of this case the corporation sustained no actual injury as a result of his misconduct. He does not claim, nor could he, that his status as corporate counsel while at the same time being a creditor of the corporation, did not present at least the *potential* for injury. For example, the complainant's expert testified that "for Mr. Cimino to have put the corporation in a position by the initial structure by which it had to commence repayment of the capital at an early stage, faster than it would provide for, caused harm to the corporation." In other words, while it might well be in the best interest of the corporation for Cimino's and the other shareholder-lenders' $25,000 to have been considered equity in the corporation, rather than mainly debt that had to be repaid within three years, it was in Cimino's interest to be a creditor of the corporation whose loan would be repaid as soon as possible. Thus, had they been advised of the conflict, it would have been prudent for the other shareholders to consult independent counsel regarding the capital structure of the corporation. The potential for injury was therefore present.

Cimino also alleges that he did not realize that an attorney-client relationship had arisen between him and the corporation, and did not perceive the conflict of interest until almost the very end of the relationship. The hearing board rejected Cimino's contention that his conduct was merely negligent because he did not realize that the corporation was his client. As the record demonstrates, and as Cimino testified, his contribution to the corporation was his legal services; he sent bills to the corporation for professional services, beginning as early as March 22, 1994. The hearing board correctly recognized that whether Cimino expected to be paid or not was not significant to the issue of whether an attorney-client relationship existed.

Cimino also claims that he did not actually perceive the conflict of interest between the corporation and himself until he began to prepare the documentation for the loans in 1995. However, the board was entitled to reject Cimino's testimony to that effect. As the trier of fact, the hearing board had the duty to assess the credibility of the witnesses and evidence. *See People v. Robnett*, 859 P.2d 872, 877 (Colo.1993). The board could reasonably conclude that the conflict presented by attempting to legally represent a debtor interests, while at the same time being one of the debtor's creditors, was so obvious that Cimino's testimony to the contrary was not credible. The board's conclusion that Cimino's mental state was not merely negligent is supported by the record and we will not overturn it. *See id.*

We therefore hold that the record supports the board's determination that the presumed sanction in this case is at least a short period of suspension. *See* ABA *Standards, supra,* at 4.32.

## B. Aggravating and Mitigating Factors

■ Although suspension is the presumed sanction, the presence of aggravating and mitigating factors is relevant in determining whether the lawyer's conduct warrants a departure from the presumed discipline. In aggravation, the board found that Cimino had previously been disciplined by a letter of admonition, *see id.* at 9.22(a); he had a dishonest or selfish motive that was evidenced by his belated preparation of the promissory note to him when it was already in default and then turning around and suing on the note, *see id.* at 9.22(b); and Cimino has substantial experience in the practice of law, *see id.* at 9.22(i). Mitigating factors included Cimino's full and free disclosure to the board and cooperative attitude toward the proceedings, *see id.* at 9.32(e); and his expression of remorse for his misconduct, *see id.* at 9.32(*l* ).[3]

■ Cimino alleges that the board erred when it refused to consider the personal and emotional problems that he was experiencing at the time of the misconduct, caused by his

3. *See note 2, supra.*

new stepchildren and by his wife's insistence that he prepare the notes and pursue repayment of his loan. *See id.* at 9.32(c). The hearing board did not consider Cimino's and his wife's testimony on this score as mitigating because "no medical [or] psychological proof of emotional problems was brought forth." This was error. We have never held that a lawyer must introduce medical or other expert evidence on the issue of the presence of personal or emotional problems. This error was harmless, however, because we ourselves now consider it.

The presence of personal or emotional problems is not a significant factor in this case. It did not cause or even affect the onset of the misconduct in early 1994. There was no evidence that Cimino's personal problems had anything to do with his entering into a prohibited business transaction with the corporation. At most, the problems may have clouded his judgment with respect to extricating himself from the futon business. The mitigating factors in this case do not persuade us that anything less than a short period of suspension is appropriate.

We suspended the lawyer in *Cohen,* — P.3d at ——, 1999 WL 711853, at **6–7 for ninety days for representing conflicting interests. Similarly, we suspended the lawyer in *Quiat,* 979 P.2d at 1042, for three months for knowingly representing adverse interests in a bankruptcy case. *See also People v. Ginsberg,* 967 P.2d 151, 153 (Colo.1998) (accepting conditional admission and suspending lawyer for ninety days for charging excessive interest on loan to client and failing to disclose conflicting interests).

Cimino refers to our decision in *People v. Potter,* 966 P.2d 1060, 1062 (Colo.1998), where we publicly censured the lawyer for failing to make the required disclosures to a client before obtaining her consent for a loan. He argues that his conduct is less aggravated than Potter's. However, we stated that the presumed sanction in *Potter* was suspension, not public censure. *See id.* A public censure was appropriate only because of the presence of substantial mitigating factors. In particular, Potter had not been disciplined in thirty-two years of practice. *See id.* Cim-

ino, on the other hand, has previously received a letter of admonition.

Unlike the lawyers in *Cohen* and *Quiat,* Cimino has expressed remorse for his misconduct. This persuades us that a shorter period of suspension than we found proper in those cases is adequate here. We have determined that thirty days is reasonable.

## C. Expert Witness Fees

■ C.R.C.P. 245.21(d)(1), 12 C.R.S. (1998) (now C.R.C.P. 251.32(d)(1)) provided: "In all cases where discipline is recommended by the hearing panel it shall certify to the Supreme Court the costs incurred in connection with the disciplinary proceedings." The certified statement of costs in this case includes a charge of $3708 for the complainant's expert witness. Cimino claims that this charge is excessive because when the complainant's expert testified to matters other than the injury his misconduct caused, the testimony was outside the relevant scope of the disciplinary hearing. Cimino claims that he should be required to reimburse the expert for the time devoted to that one issue only. We disagree. We have examined the witness's testimony and have found it relevant to, not only the harm, but also the existence of the conflicts of interest and how those conflicts may have shaped the corporation's capital structure. Cimino has not advanced any other reason why the expert fee should be deemed excessive. We therefore order that he must pay the entire amount of expert fees.

## III.

It is hereby ordered that John A. Cimino is suspended from the practice of law for thirty days, effective thirty days after this opinion is issued. He is also ordered to pay the costs of this proceeding in the amount of $5229.67 within [ninety] days of the date on this decision to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432. He is further ordered to complete an ethics seminar during the period of suspension regarding conflicts of interest. If such a seminar is not available, Cimino must complete an equivalent seminar as provided by the Office

of Regulation Counsel within the period of suspension, or as soon thereafter as possible. While completion of the ethics seminar is not a condition precedent for reinstatement, the failure to comply with our order may be grounds for further discipline.