WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE*
Before a Hearing Board comprising Sherry A. Caloia and Thomas J. Herd, both lawyers, and William R. Lucero, the Presiding Disciplinary Judge ("PDJ"), is a mandate from the Colorado Supreme Court. That tribunal remanded this matter for a redetermination of the appropriate sanction after it affirmed in part and reversed in part the Hearing Board's findings that James C. Wollrab ("Respondent") had committed misconduct in two business transactions with clients. In light of the Colorado Supreme Court's conclusions that Respondent violated Colo. RPC 1.8(a)(1)-(3) in one transaction and Colo. RPC 1.8(a)(3) in another, the Hearing Board determines that a nine-month suspension, with the requirement of petitioning for reinstatement under C.R.C.P. 251.29(c), is warranted.
I. PROCEDURAL HISTORY
Respondent took the oath of admission and was admitted to practice law in Colorado on April 26, 1972, under attorney registration number 01906. He is thus subject to the jurisdiction of the Colorado Supreme Court *1261 and the Hearing Board in this disciplinary proceeding.[1]
On July 28, 2016, Jacob M. Vos, Office of Attorney Regulation Counsel ("the People"), filed a complaint in this case, alleging that Respondent had violated Colo. RPC 1.8(a) and 4.2. Respondent answered on September 6, 2016. At the three-day hearing from February 21 to 23, 2017, Vos represented the People, and Troy R. Rackham represented Respondent.
On May 10, 2017, the Hearing Board issued an "Opinion and Decision Imposing Sanctions Under C.R.C.P. 251.19(b)," suspending Respondent for one year and one day. The interested reader may review that opinion for the Hearing Board's full findings of fact.
In that opinion, the Hearing Board concluded that Respondent engaged in two business transactions with his clients and friends, Lazlo and Wendy Bagi. In the first transaction, a majority of the Hearing Board concluded that Respondent had drafted unfair and unreasonable terms in an option agreement ("the Option"), which gave him the right to purchase from the Bagis a 50 percent stake in a property then worth $3 million for just $200,000.00, and that he did not advise the Bagis in writing of the desirability of seeking independent counsel's advice. The Hearing Board also concluded that Respondent failed to obtain written informed consent to the essential terms of the Option or his role in that deal, and that he presented the Option for Mr. Bagi's signature at a time when the Bagis' independent counsel was not present. The Hearing Board found that in drafting the Option, Respondent violated Colo. RPC 1.8(a)(1)-(3) and Colo. RPC 4.2.[2] As to the second transaction ("the Lease"), the Hearing Board concluded that Respondent had drafted for himself a lifetime lease for office space at far-below market rates, stripping out all provisions that would have protected the landlord, the Bagis. The Hearing Board found that in drafting the Lease, Respondent violated each of the three subsections of Colo. RPC 1.8(a).
On May 30, 2017, Respondent filed a motion under C.R.C.P. 59 and an application for stay of his suspension pending appeal. The Hearing Board denied Respondent's C.R.C.P. 59 motion but granted his application for stay, provided that he submit to quarterly practice monitoring by a Colorado attorney approved by the People. A practice monitor was appointed in August 2017, and Respondent was ordered to begin quarterly meetings with the monitor and submit regular written reports to the People by certain dates. The stay was revoked in January 2018, after Respondent fell out of compliance with the terms of his monitoring program by failing to produce requested documentation, to timely communicate, and to attend scheduled meetings. The Hearing Board concluded that Respondent had repeatedly violated the conditions attached to his stay without good cause, thereby evincing a pattern of disrespect for the Hearing Board's orders, the practice monitor's time, and the disciplinary process. The Hearing Board revoked the stay pending appeal and suspended Respondent from the practice of law for one year and one day, effective February 5, 2018. Respondent's law license has been suspended since that time.
Respondent appealed the disciplinary opinion to the Colorado Supreme Court, contesting the Hearing Board's findings that he had violated several Rules of Professional Conduct. On June 25, 2018, the Colorado Supreme Court issued an opinion affirming in part and reversing in part.[3] In that opinion, the Colorado Supreme Court affirmed the Hearing Board's findings of fact. It also upheld the Hearing Board's conclusions of law concerning the Lease, finding that Respondent violated Colo. RPC 1.8(a)(1)-(3) in that transaction. As to the Option, the Colorado Supreme Court upheld the Hearing Board's conclusion that Respondent violated Colo. RPC 1.8(a)(3) when he entered into the Option without obtaining his clients' written informed *1262 consent to his role in the deal. But the Colorado Supreme Court reversed the Hearing Board's determination that Respondent violated Colo. RPC 1.8(a)(1) and (2) and Colo. RPC 4.2 in the Option deal, concluding that the Bagis' independent counsel impliedly consented to the terms of the Option and to Respondent's contact with Mr. Bagi. The Colorado Supreme Court remanded this case to the Hearing Board for determination of the appropriate sanction in light of the partial reversal. The mandate issued on July 11, 2018.
II. SANCTIONS
The Hearing Board now proceeds to analyze the appropriate sanction in this matter, considering the relevant factual findings in our opinion and the rule violations found by the Colorado Supreme Court: that Respondent violated Colo. RPC 1.8(a)(3) in both the Option and the Lease deals by failing to obtain the Bagis' written consent to the essential terms of those transactions and Respondent's role in them; that Respondent violated Colo. RPC 1.8(a)(1) in the Lease transaction by drafting unfair and unreasonable lease terms not fully understood by the Bagis; and that Respondent violated Colo. RPC 1.8(a)(2) in the Lease transaction by failing to advise the Bagis of the desirability of seeking independent counsel and by failing to provide the Bagis a reasonable opportunity to do so. We are guided in this task by the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[4] and Colorado Supreme Court case law.[5] In imposing a sanction after a finding of lawyer misconduct, we must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : Respondent exploited his position of trust to the Bagis' very real detriment by entering into a conflicted business transaction with them. He thereby violated an attorney's most fundamental duty to a client: the duty of loyalty.
Mental State : We find that Respondent knowingly entered into the Lease, a patently unfair business transaction with the Bagis, without observing the requisite protections. He also knowingly presented the Option to Mr. Bagi without garnering Mr. Bagi's written informed consent to his role in the deal.
Injury : The Lease that Respondent drafted conferred on him a lifetime tenancy at far-below market rates, encumbering any future sale of the property and preventing the Bagis from later increasing rent. One witness estimated that as of January 2016, the difference between the market rental rate and Respondent's rent was approximately $11.00 per square foot, resulting in a cumulative shortfall of almost $110,000.00. But even if we were to overlook this shortfall in earnings, we would still find that the Lease caused the Bagis some financial injury, since the $3.00 per square foot rental amount did not even cover basic operating expenses.
Respondent also harmed the Bagis by asserting legal rights against them, relying on the customized Lease that he drafted. Based on bespoke clauses that he inserted into the Lease, Respondent refused to remove bedroom furniture from his office and rebuffed requests to remove storage trailers on the property, even though land use codes forbade trailers on the property. Based on his excision of other standard lease clauses, including those requiring the tenant to carry insurance and to indemnify the landlord, Respondent threatened to sue the Bagis' company to replace window glass broken by his own son. He also filed an insurance claim against the Bagis' company to cover medical care for injuries he sustained after falling down a set of metal stairs coated in ice, even though he had been warned not to use the stairs and even though he had earlier assured Ms. Bagi that he had obtained property insurance, which he then allowed to lapse *1263 less than two months later. An independent lawyer would have advised the Bagis about the possible consequences of each of these Lease additions and deletions.
Further, Respondent's stripped-down Lease jeopardized the Bagis' legal interests and exposed them to substantial liability if some unlikely catastrophic event had come to pass. For example, by omitting the landlord's right to cancel the Lease in the event of a condemnation or casualty, Respondent effectively ensured that the Bagis would be obligated to him for the Lease's term even if the building burned down. If the Bagis did not then restore Respondent to his tenancy, he would have a viable claim for damages.
Finally, as Ms. Bagi testified, she and her husband felt betrayed by Respondent's self-dealing.
ABA Standards 4.0-7.0-Presumptive Sanction
The presumptive sanction in this case is suspension, as set forth in ABA Standard 4.32, which applies when a lawyer knows of a conflict of interest and does not fully disclose to the client the possible effect of that conflict, thereby causing injury or potential injury to the client.
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations that may justify an increase in the degree of the sanction to be imposed, while mitigating circumstances include any factors that may warrant a reduction in the severity of the sanction.[6] The parties have proposed that we apply a variety of aggravators and mitigators. As explained below, we apply four aggravating factors, two of which we weigh heavily, offset by one mitigating factor.[7]
Prior Disciplinary Offenses-9.22(a) and Remoteness of Prior Offenses-9.32(m): As an aggravating factor under ABA Standard 9.22(a), Respondent has thrice been disciplined.[8] He received a private admonition in 1979 after intentionally misleading a law enforcement officer. Respondent was again privately admonished in 1983 for representing a defendant in a lawsuit in which he was both a defendant and a necessary witness, thereby violating a rule prohibiting a lawyer from accepting employment in pending litigation when it is obvious that the lawyer will be called as a witness. He was chided in that letter for procrastination and lack of cooperation during the disciplinary investigation. In 1996, Respondent was publicly censured for separately asking two police officers not to attend his client's driver's license revocation hearing. Respondent also told one of the officers that in exchange for his nonappearance, the client would plead guilty to a lesser charged offense. Based on the countervailing mitigating factor of remoteness under ABA Standard 9.32(m), however, we accord Respondent's disciplinary history only average weight, because his prior offenses were remote in time.
Dishonest or Selfish Motive-9.22(b) : In his business dealings with the Bagis, Respondent acted selfishly and disloyally, seeking to profit at their expense. This is a significant aggravating factor.
Refusal to Acknowledge Wrongful Nature of Misconduct-9.22(g) : Respondent has evinced no regret or remorse, nor has he acknowledged his wrongdoing in any of these matters. In fact, he seemed not to be bothered in the least by the fact that his clients had been injured. We give this aggravating factor considerable weight.
Substantial Experience in the Practice of Law-9.22(i) : Respondent was licensed in 1972 and practiced law continuously until he was suspended in this case. This, too, we consider an aggravating factor.
*1264 Analysis Under ABA Standards and Case Law
The Colorado Supreme Court has directed hearing board members to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors.[9] We are mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[10] Though prior cases are helpful by way of analogy, hearing boards must determine the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
Colorado cases involving self-dealing span a range of sanctions, including suspensions of varying lengths. We examine four such cases in some detail. In People v. Cimino , a lawyer formed a new corporation with three other directors, all of whom loaned the corporation significant sums.[11] The board then authorized the lawyer to prepare corporate minutes and promissory notes for the loans, which were to carry 12 percent interest.[12] The lawyer did not adequately advise shareholders or corporate officers to obtain independent counsel, did not notify them of his conflicts of interest, and did not obtain other shareholders' written consent to waive the conflicts.[13] He also failed to timely prepare the promissory notes and the minutes of the corporation authorizing the debt.[14] The lawyer then resigned as director and sued the corporation to collect on the debt.[15] Considering the lack of actual harm as well as the three aggravating factors and two mitigators, including the lawyer's remorse, the Colorado Supreme Court concluded that a served suspension of thirty days was adequate.[16]
Also relevant is People v. Frascona , where, based on the parties' stipulation of facts, the Colorado Supreme Court approved a served sixty-day suspension.[17] There, a client invested $50,000.00 in a limited partnership that his lawyer had helped to organize.[18] The lawyer did not disclose to the client the risks of the investment.[19] Thereafter, without making any disclosures to the client, the lawyer arranged for the partnership to acquire two properties in which the lawyer had a financial interest; made three loans to the partnership; became a general partner and altered the partnership's structure; and then brought an action against the other partners for dissolution and winding up.[20] The hearing board found, however, that the client's losses during the relevant period were caused by fluctuations in the market, rather than by the lawyer's negligent failure to disclose.[21] The Colorado Supreme Court rejected public censure as insufficient, given the four aggravating factors and two mitigating factors, noting that "any doubts as to whether the appropriate sanction should be a suspension or public censure are resolved by [the lawyer's] prior disciplinary history" of one private censure and two letters of admonition.[22]
People v. Ginsberg involved a lawyer's $25,000.00 loan to a longstanding client.[23] The loan carried an excessive 30 percent interest rate, and the lawyer did not fully disclose the *1265 lawyer's and the client's differing interests.[24] When the client did not timely pay the note, the lawyer drafted an extension agreement calling for the client to release any claims against him arising either from his representation or from the original promissory note.[25] The lawyer also brokered an additional loan between his client and a trust that he believed was associated with the lawyer's close relative.[26] The Colorado Supreme Court approved the parties' stipulation to a ninety-day served suspension, taking into consideration five aggravating factors and two mitigating factors.[27] The court noted that although the "potential for harm was present," the client suffered "little actual damage aside from the excessive 30% interest rate."[28]
Finally, we consider People v. Silver , in which a lawyer was suspended for one year and one day for violating Colo. RPC 1.7(b) and 1.8(a).[29] In Silver, the lawyer served as president, principal employee, and counsel for a mortgage lending company.[30] He brokered a loan between the company and a couple who wished to refinance a mortgage.[31] As part of that deal, the lawyer agreed to negotiate a settlement of another lien for the couple; the lawyer did so, and the couple paid him attorney's fees.[32] Then, for more than a year thereafter, the lawyer performed many legal services for the couple and their relatives while billing the company for his work on the couple's loan.[33] The lawyer never informed the couple in writing of his existing conflicts.[34] The couple later obtained two other loans from the company-a transaction in which the lawyer represented the company.[35] Four aggravating factors, including prior discipline, were offset only by one mitigating factor.[36] The Colorado Supreme Court suspended the lawyer for one year and one day, noting that the conflicts in the case were "obvious."[37]
With these authorities guiding us, we turn to Respondent's misconduct. In the Option deal, Respondent contravened the letter of the rule governing conflicts of interest, but we do not consider that violation the gravamen of this matter. In the Lease transaction, however, Respondent acted selfishly, trying to line his pockets at his clients' expense. His Lease gutted every landlord right and remedy from the standard lease form, while guaranteeing for himself a lifetime tenancy for $3.00 per square foot on a gross basis-not enough even to cover the costs of upkeep, utilities, and taxes for his leased premises. His later demands under those harsh Lease terms, coupled with his legal efforts to enforce the Lease, injured the Bagis. A period of suspension is thus presumptive and appropriate.
In general, a served suspension is viewed as a baseline sanction, to be adjusted upward or downward in consideration of aggravating or mitigating factors.[38] Here, unlike in Cimino and Ginsberg , the Bagis suffered real and actual injury. And here, unlike in Frascona , Respondent acted knowingly, not negligently, when he crafted the Lease terms. The aggravators in this matter significantly outweigh the one mitigator, whereas the aggravating-mitigating *1266 balance in Cimino , Ginsberg , and Frascona was somewhat more even. Respondent's sanction should therefore go beyond the sanctions levied in those cases. In contrast to Silver , Respondent's self-dealing did not affect the exercise of his independent judgment in a matter where he was actively representing the Bagis; Silver involved a violation of Colo. RPC 1.7(b), which implicates a lawyer's loyalty during the representation of a client.[39] On the other hand, although Silver 's conflicts were more protracted and numerous, Respondent's conflicted interests were just as obvious.
We conclude that Respondent should be suspended for nine months, with the requirement that he petition for reinstatement under C.R.C.P. 251.29(c). The Colorado Supreme Court's ruling, which reversed on legal grounds three of our rule violation findings, warrants a reduction in the one-year-and-one-day sanction that we originally imposed. We conclude that, beginning with a baseline sanction of six months and factoring in the four aggravators and sole mitigator, a nine-month suspension is appropriate. We also take note that the Colorado Supreme Court's ruling did not disturb our factual finding that Respondent violated a lawyer's cardinal client-centered duty of loyalty when he took advantage of the Bagis in the Lease transaction. Nor did that ruling alter our conclusion that Respondent has steadfastly refused to express remorse or regret for harming his clients. Because Respondent knowingly engaged in selfish conduct-to the Bagis' financial detriment and for his own financial gain-yet never evinced any recognition of his wrongdoing, the Hearing Board concludes that the public is best protected if we require him to petition for reinstatement under C.R.C.P. 251.29(c), which will require him, among other things, to prove by clear and convincing evidence that he has been rehabilitated from the shortcomings that led to his misconduct.
III. CONCLUSION
Respondent drafted for himself a lifetime lease for office space at far-below market rates while eliminating all protective provisions that benefitted his clients, the landlord. He drafted these terms-which were egregiously unfavorable to his clients-with a selfish intent to profit at his clients' expense, and he expressed no remorse for his actions. This misconduct calls for a nine-month suspension, with the requirement that he petition for reinstatement under C.R.C.P. 251.29(c).
IV. ORDER
The Hearing Board therefore ORDERS :
1. JAMES C. WOLLRAB , attorney registration number 01906, SHALL BE SUSPENDED FOR NINE MONTHS . The suspension took effect on February 5, 2018.
2. If Respondent wishes to resume the practice of law, he MUST petition for reinstatement under C.R.C.P. 251.29(c).
3. The parties MUST file any posthearing motion on or before Thursday, August 16, 2018 . Any response thereto MUST be filed within seven days.
4. Respondent SHALL pay the costs of these proceedings. The People submitted "Complainant's Statement of Costs" on May 15, 2017; Respondent did not file a response. Accordingly, Respondent SHALL pay, on or before Thursday, August 30, 2018 , $8,242.91 to:

The Presiding Disciplinary Judge signs this order on behalf of the Hearing Board, whose members unanimously approve the order.

See C.R.C.P. 251.1(b).

Hearing Board member Caloia concurred with the factual findings and imposition of sanctions but dissented as to the finding that Respondent violated Colo. RPC 1.8(a)(1) & (2) in the Option transaction.

See In re Wollrab , 2018 CO 64, 420 P.3d 960.

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

See ABA Standards 9.21 & 9.31.

These findings were undisturbed by the Colorado Supreme Court and remain largely unchanged from our original opinion, save for the elimination of the multiple offenses aggravating factor, ABA Standard 9.22(d). Even though Respondent violated Colo. RPC 1.8(a)(3) in two discrete business transactions with the Bagis, we consider his violation of that rule in the Option deal a lesser infraction and thus do not apply the multiple offenses aggravator.

See Ex. S37.

See In re Attorney F. , 2012 CO 57 ¶ 21, 285 P.3d 322 ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 2012 CO 57 ¶ 20, 285 P.3d 322 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

3 P.3d 398, 399 (Colo. 2000).

Id.

Id.

Id.

Id.

Id . at 401-02.

868 P.2d 385, 386 (Colo. 1994).

Id.

Id.

Id .

Id. at 386-87.

Id. at 387.

967 P.2d 151, 152 (Colo. 1998).

Id .

Id.

Id.

Id. at 153.

Id.

924 P.2d 159, 162-63 (Colo. 1996)

Id. at 160.

Id .

Id .

Id.

Id. at 161.

Id .

Id. at 162.

Id .

See ABA Standard 2.3 ("Generally, suspension should be for a period of time equal to or greater than six months...."); see also In re Cummings , 211 P.3d 1136, 1140 (Alaska 2009) (using a baseline sanction of six months); In re Moak , 205 Ariz. 351, 71 P.3d 343, 348 (2003) (same); In re Stanford , 48 So.3d 224, 232 (La. 2010) (same); Hyman v. Bd. of Prof'l Responsibility , 437 S.W.3d 435, 449 (Tenn. 2014) (same); In re McGrath , 174 Wash.2d 813, 280 P.3d 1091, 1101 (2012) (same).

Colo. RPC 1.7 prohibits a representation involving a concurrent conflict of interest, including where two clients are directly adverse to each other or where there is a significant risk that the representation will be materially limited by the lawyer's own personal interests.