Mr. Chief Justice McWilliams
delivered the opinion of the Court.
In a formal complaint filed by the Attorney General with our Grievance Committee the respondent was charged with wrongfully endorsing the name of one Charles Hotz to a certain check and converting the proceeds of the check to his personal use. By answer the respondent denied that he had wrongfully endorsed the name of Charles Hotz to the check which formed the basis for this controversy.
The matter was eventually heard by a three-man Hearings Committee. Upon hearing a sharp conflict in *111 the testimony developed. Charles Hotz testified that he gave a certain note to respondent for the purpose of making collection thereon, with the understanding that monies recovered would be delivered by the respondent to Hotz. It was undisputed that a certified check in the amount of $3,440 was given in payment of the note. This check was executed by the maker of the note, one Oscar Fiene, and was made public to his (Fiene’s) attorney. Fiene’s attorney endorsed the check with the following restriction: “Pay to the order of Charles Hotz.” It was Hotz’ testimony that he never received this check or the proceeds thereof; that he did not authorize the respondent to endorse his (Hotz’) name to the check; that he repeatedly but unsuccessfully tried to contact the respondent about this matter, both by letter and by telephone; and that he finally made complaint to the Denver Bar Association.
Respondent testified that he did indeed endorse Hotz’ signature to the check in question, but only after Hotz had given him telephonic permission to do so. Respondent stated that in the aforesaid telephone conversation Hotz agreed to loan the proceeds of the check to him and that he intended to repay this loan out of certain trust funds that hopefully were soon to be paid respondent’s wife. However, as of the date of the hearing, respondent had paid Hotz nothing on this alleged loan.
One witness testified that the respondent had on a prior occasion informed him that he (the respondent) had in fact forwarded the check in question to Hotz, who was a resident of California, and that Hotz in turn had himself endorsed the check and then returned it to the respondent. In response to this line of testimony, respondent stated he did not recall ever making such a statement, although his recollection in this regard was a trifle hazy and he conceded the possibility that such a statement could have been made by him or so interpreted by the aforesaid witness. In any event, at the hearing it was respondent’s position that he endorsed *112 the check with Hotz’ permission; that the proceeds represented a loan to him by Hotz; that he spent all of the proceeds for personal use; and that if the trust monies had only been received by his wife (which apparently they were not) he would have long since repaid the loan and the controversy would never have arisen.
Bearing on the critical issue as to whether the respondent endorsed the check here involved with the knowledge and approval of Mr. Hotz, the Hearings Committee made the following pertinent findings:
“5. That thereafter the respondent, without the knowledge, approval or consent of said Charles Hotz, endorsed the name of Charles Hotz on the reverse side of said check, and on February 21, 1967 the respondent deposited the check in his own personal and business checking account and proceeded to use the proceeds for his own purposes; that no portion of said sum had been returned to Mr. Hotz as of December 7, 1968.
“6. That on several occasions thereafter Charles Hotz talked on the telephone with the respondent and the respondent advised Mr. Hotz that the check was still on his desk or that the check was in the mail.
“7. That some months later Mr. Hotz wrote to T. Henry Hutchinson [Mr. Fiene’s attorney] concerning the transaction and Mr. Hutchinson forwarded to Mr. Hotz a photostatic copy of the paid check and then for the first time Mr. Hotz knew that the check had been cashed.
“8. That the respondent told Mr. Fletcher Thomas who investigated this matter at the informal stage and who testified as a witness at the formal hearing, that he, the respondent, had mailed the check in question to Mr. Hotz who had endorsed his name to it, and had returned the check to the respondent; that this statement made to Mr. Thomas is in direct conflict to the admissions made by respondent at the hearing.”
Based on the aforementioned findings of fact, the Hearings Committee concluded that the respondent’s actions were contrary to the highest standards of professional *113 conduct, honesty, justice and morality and recommended that the respondent be disbarred and further, that the entire costs of the proceedings be assessed against him. The Grievance Committee thereafter approved the several findings, conclusions and recommendations of the Hearings Committee and the matter accordingly awaits action by this Court.
Mention perhaps should be made that in response to the report of our Grievance Committee respondent filed exceptions, alleging therein that it was not shown that he acted without the knowledge, approval or consent of his client, Mr. Hotz, and that in any event the recommendation of disbarment was too “harsh and severe.”
Our study of the record convinces us that the findings and conclusions of the Grievance Committee and more particularly the findings and conclusions of the Hearings Committee, which was the body that actually saw and heard the persons testifying about this matter, are correct. Granted that the testimony of Hotz and the respondent was completely at odds, still the corroborating evidence, and there was much of it, tended to substantiate Hotz’ version of the matter. Under such circumstances we do hereby approve and adopt as our own the aforementioned findings and conclusions.
Having found then that respondent forged the signature of his client to a check and thereafter did convert the proceeds thereof, namely $3,400, to his own use, it becomes quite obvious that this is a very serious matter and warrants — indeed requires- — severe disciplinary action. Accordingly, the respondent, Robert H. Kiley, is hereby disbarred and is directed to forthwith surrender to the clerk of this Court the license to practice law heretofore issued to him. He is enjoined and prohibited from in any manner practicing law in the State of Colorado. Cost attendant to the proceeding before the Hearings Committee in the sum of $211.98 shall be paid by the respondent into the registry of this Court within ninety days.