ERICKSON, Chief Justice, specially concurring:

The PEOPLE of the State of Colorado, Complainant,

v.

Raymond Douglas BUCKLES, Attorney-Respondent.

Nos. 82SA596, 83SA312.

Supreme Court of Colorado, En Banc.

Jan. 9, 1984.

consolidated two proceedings before the Grievance Committee for the purpose of this opinion.[1] Disbarment is the sanction recommended in both cases. We approve the recommendation of disbarment. The respondent's conduct, which was the subject of the complaint in No. 83SA312, was also the basis for three separate charges of theft. The respondent pled guilty to the criminal charges. He denied responsibility for the same acts in the disciplinary proceeding. This chapter in our disciplinary history requires imposition of the severe sanction of disbarment to protect the public.

Raymond Douglas Buckles was admitted as a member of the bar of this court in 1950. He was disbarred on September 14, 1959 for criminal conduct which caused him to serve a term in the Colorado State Penitentiary. *See People ex rel. Colorado Bar Association v. Buckles,* 140 Colo. 261, 343 P.2d 1046 (1959).

After his release from the penitentiary and completion of some public service, he petitioned for reinstatement and on February 13, 1975, was again granted the right to practice law. His conduct as a lawyer since his reinstatement is all but identical to the conduct which resulted in his earlier disbarment and conviction.[2] He has, in the course of his latest criminal escapades, proved his total unworthiness to hold a position of trust. It is therefore ordered that the respondent be disbarred and that he be ordered to make restitution to his former clients in accordance with the directions in this opinion.

I. *Proceeding 82SA596*

A. *Estilla Carlisle*

■ Sometime prior to August 1979, respondent agreed to represent Estilla Carlisle on a number of criminal charges.[3] In January 1980, the district attorney's office

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

No appearance for attorney-respondent.

ERICKSON, Chief Justice.

The Grievance Committee of the Supreme Court has reviewed a long series of complaints arising out of the misappropriation of funds by the respondent. We have

1. The pertinent proceedings are 82SA596 and 83SA312. Section I of this opinion sets forth the relevant facts regarding the two separate counts included in 82SA596. Section II addresses the two counts included in 83SA312.

2. The respondent has been under an order of suspension since April 22, 1982. The order

was entered by this court to prevent misconduct by the respondent as a lawyer.

3. These charges, pending at the time in the State of Wisconsin, included theft and theft by receiving.

in Wausau, Wisconsin agreed to accept a no contest plea to three misdemeanor charges conditioned upon Estilla Carlisle's paying a fine of $3,750. The plea agreement was accepted by Estilla Carlisle and $3,750 was paid to respondent Buckles to satisfy the plea agreement and for submission to the Wisconsin authorities. Buckles deposited the funds in his own account and sent his personal check with the inscription "full payment for restitution, court costs and attorney's fees on Estilla Carlisle." Because the check was a personal check, the bank on which the check was drawn was called and it was determined that the funds in the respondent's account were insufficient to pay the check. Respondent was notified that the check was short and a request was made that he submit certified funds. Respondent did not respond to the request. The case was dismissed with prejudice for reasons not relevant to our inquiry, but was later reinstated by the court.

Estilla Carlisle has demanded that the funds be returned to her or forwarded to the proper authorities in Wisconsin; the respondent has not replied to the demand. The respondent's conduct violates Rule 241.-6, C.R.C.P.[4] and the Code of Professional Responsibility, DR 1–102(A)(4),[5] DR 1–102(A)(6),[6] DR 7–101(A)(2),[7] DR 7–101(A)(3),[8] and DR 9–102(B)(4).[9]

### B. *Michael Johnson*

■ Michael Johnson was confined in the Arapahoe County jail under charges of felony menacing and theft. The respondent agreed to represent him upon the payment of a $250 retainer. The $250 was paid to the respondent but he did not enter an appearance on behalf of Michael Johnson and has refused to return the funds or to respond to the complaint made by the Grievance Committee.

Respondent's conduct violates Rule 241.6, C.R.C.P. and the Code of Professional Responsibility, DR 1–102(A)(4), DR 1–102(A)(6), DR 7–101(A)(2), DR 7–101(A)(3), and DR 9–102(B)(4).

### II. *Proceeding 83SA312*

The following criminal episodes provided the basis for a disciplinary complaint which was held in abeyance at the respondent's request until the criminal charges could be prosecuted.[10] The respondent entered a series of guilty pleas to the charges. He has refused to cooperate with the Grievance Committee in its investigation and did not answer the disciplinary complaint. A default was entered.

### A. *Raul and Nelsi LaBorda*

■ In March, 1976, Raul and Nelsi LaBorda retained respondent to represent them in a matter arising out of injuries sustained in a four-car accident which occurred on July 14, 1975. Respondent and the LaBordas executed a contingent fee agreement whereby respondent would receive 30% of any recovery if the matter

**4.** C.R.C.P. 241.6 provides: "Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship: (6) Any act or omission which violates these Rules or which violates an order of discipline or disability; ..."

**5.** DR 1–102(A)(4) provides: "A lawyer shall not: (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

**6.** DR 1–102(A)(6) provides: "A lawyer shall not: (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

**7.** DR 7–101(A)(2) provides: "A lawyer shall not intentionally: (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105."

**8.** DR 7–101(A)(3) provides: "A lawyer shall not intentionally: (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B)."

**9.** DR 9–102(B)(4) provides: "A lawyer shall: (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

**10.** *See* C.R.C.P. 241.25(g).

settled prior to trial and 35% of any recovery if the matter went to trial.

On November 12, 1980, defendant's insurer, "Maryland Casualty," issued a settlement draft in the amount of $20,000 payable to Raul and Nelsi LaBorda and respondent. The LaBordas told respondent that they were not interested in settling the matter for $20,000 and instructed him to return the check. Respondent negotiated the check and misappropriated the funds.

After several continuances, a trial date, according to the respondent, was set for October 21, 1981. On October 20, 1981, Raul LaBorda informed respondent that he would only accept $70,000 in settlement. On the morning of October 21, 1981, respondent called the LaBordas and informed them that the "insurance company" had agreed to the $70,000 settlement and that the money would be forthcoming in three to four weeks.

On December 18, 1981, Raul LaBorda met with respondent at a local restaurant. Respondent told LaBorda that the "insurance company" would be delivering a check for $1,400 which would represent 12% interest for two months on the $70,000 settlement. Respondent also stated that they would receive an additional $700 as an interest payment for January, 1982. Near the end of January 1982, respondent delivered to the LaBordas a cashier's check for $1,400 which had been purchased by T.J. Dunn as the purported interest from the "Aetna Corporation." On February 5, 1982, Raul LaBorda was advised by the respondent that the $70,000, plus $700 interest due for January 1982, would be forthcoming but that there were some problems with the paperwork.

On February 17, 1982, the LaBordas still had not received the $70,000 sum. Raul LaBorda then discovered that one of the defendants was insured by "Maryland Casualty," and not `by "Aetna Corporation." Thereafter, Raul LaBorda learned that the $20,000 check sent by Maryland Casualty in November 1980, had been paid and that the case had been dismissed with prejudice by the court in September 1981.

The LaBordas contacted respondent on February 18, 1982, and informed him that they knew that he had negotiated the $20,000 check and had forged their endorsements. Respondent told the LaBordas that the case against Maryland Casualty's insured was still open and asked for a few days to produce the cash. He also requested that the LaBordas not report him to the Grievance Committee. On February 22, 1982, the LaBordas inspected the $20,000 check and confirmed that their signatures had been forged on the draft. The court file documenting the litigation in the district court was withdrawn by T.J. Dunn and has not been returned to the court. T.J. Dunn's signature strongly resembles the respondent's signature and was the name used by the respondent to purchase the cashier's check for the alleged $1,400 interest payment from the "Aetna Corporation."

Respondent's conduct violates Rule 241.6, C.R.C.P. and the Code of Professional Responsibility, DR 1–102(A)(4), DR 1–102(A)(5),[11] DR 1–102(A)(6), DR 7–101(A)(3), and DR 9–102(B)(4).

### B. *Louis B. Reece*

■ On January 5, 1981, Louis B. Reece, Jr. hired respondent to represent him at a career service hearing. On February 5, 1981, the hearing date, Reece paid respondent $750 as the total fee for legal services in the case. Subsequently, Reece was awarded $7,986 in damages. A check was issued payable to Reece and the respondent. Respondent converted the funds to his own use. Thereafter, Reece repeatedly called respondent's office to inquire about the check. Reece was not able to contact the respondent. He did, however, learn that the check had been cashed.

In July 1981, Reece contacted respondent and was told that the check had been stolen by someone in his office and that respondent's bonding company would cover the

---

**11.** DR 1–102(A)(5) provides: "A lawyer shall not: (5) Engage in conduct that is prejudicial to     the administration of justice."

loss. To date, Reece has not received the funds which were wrongfully converted by the respondent. When the disciplinary prosecutor sought an interim suspension of the respondent pursuant to C.R.C.P. 241.8, respondent produced an affidavit of George Benningfield which stated that Benningfield had received almost $8,000 in cash from respondent and had given the money to Reece. Upon Reece's adamant denial that he received the money, Benningfield, who was a convicted bank robber awaiting transportation to the federal penitentiary, recanted his affidavit and admitted that respondent had requested that he make the false affidavit.

On December 30, 1981, respondent entered pleas of guilty to the felony offenses of theft (section 18–4–401, C.R.S.1973) and second degree forgery (section 18–5–103, C.R.S.1973).

Respondent's conduct violates Rule 241.6, C.R.C.P. and the Code of Professional Responsibility, DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), DR 7–101(A)(3), and DR 9–102(B)(4).

### III.

Respondent's professional conduct is an egregious demonstration of fraud and deceit which clearly proves his untrustworthiness to be a lawyer. He has violated C.R.C.P. 241.6 and the Code of Professional Responsibility.

■ Misuse of funds by a lawyer strikes at the heart of the legal profession by destroying public confidence in lawyers. *People v. Harthun,* 197 Colo. 1, 593 P.2d 324 (1979). The most severe punishment is required when a lawyer disregards his professional obligations and converts his clients' funds to his own use. *People v. Kluver,* 199 Colo. 511, 611 P.2d 971 (1980); *see also People v. Hilgers,* 200 Colo. 211, 612 P.2d 1134 (1980) (misappropriating funds entrusted to attorney warrants disbarment for a minimum period of ten years); *People v. Sarvas,* 185 Colo. 329, 524 P.2d 304 (1974) (comingling of funds and use of clients' funds for personal purposes warrants disbarment); *People v. Kiley,* 170 Colo. 110,

463 P.2d 880 (1969); (disbarment of attorney for forging signature of client to check and thereafter converting proceeds to his own use).

■ The public has a right to expect that one who engages in such professional misconduct shall be severely disciplined. *People v. Kendrick,* 646 P.2d 337 (Colo. 1982). Respondent's misuse of his professional status to accomplish the felonious theft of his clients' funds requires disbarment. *See People v. McGonigle,* 198 Colo. 315, 600 P.2d 61 (1979). Violations of C.R.C.P. 241.6 and of the Code of Professional Responsibility by the respondent require that we disbar the respondent and order that his name be stricken from the roll of lawyers authorized to practice before this court.

We also order that respondent make full restitution to Estilla Carlisle, Michael Johnson, and Louis B. Reece within three years from the announcement of this opinion. The funds shall be paid to the Clerk of the Supreme Court in the following amounts:

1. Estilla Carlisle—$3,750, together with interest at 12% per annum from January 10, 1980 until paid.

2. Michael Johnson—$250, together with interest at 12% per annum from December 1981 until paid.

3. Louis B. Reece—$7,986, together with interest at 12% per annum from February 5, 1981 until paid.

The funds which the respondent misappropriated from Raul and Nelsi LaBorda are in excess of $20,000, but are not subject to an order for restitution because the loss to the LaBordas has not been determined. Respondent is also ordered to pay costs in the amount of $277.07 to the Supreme Court Grievance Committee at 190 East 9th Avenue, Suite 440, Denver, Colorado 80203, within three years.

Accordingly, the respondent is disbarred and is ordered to make restitution and pay costs as set forth in this opinion.