The PEOPLE of the State of
Colorado, Complainant

v.

Emily E. COHEN, Respondent.

No. 15PDJ045.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Jan. 11, 2016.

## I. *PROCEDURAL HISTORY*

In February 2014, the Office of Attorney Regulation Counsel ("the People") filed a petition to immediately suspend Respondent's law license under C.R.C.P. 251.8.[1] Respondent did not participate in the proceeding before the PDJ. The PDJ found reasonable cause to believe that Respondent had caused immediate and substantial harm by converting client funds.[2] The Colorado Supreme Court accepted the PDJ's recommendation and immediately suspended Respondent, effective March 21, 2014.

The PDJ transferred Respondent to disability inactive status under C.R.C.P. 251.23(d) in connection with separate disciplinary matters,[3] first in September 2014 and again in January 2015. By order of April 23, 2015, the PDJ found that Petitioner could assist in her defense of disciplinary proceedings yet was unable to represent herself or clients. The PDJ therefore appointed counsel for Respondent in her pending cases and placed her on disability inactive status under C.R.C.P. 251.23(c), rather than C.R.C.P. 251.23(d), thus allowing the disciplinary cases against her to proceed.[4]

The People filed their complaint in the present case on June 22, 2015, alleging that Respondent violated Colo. RPC 8.4(b) and C.R.C.P. 251.5(b). Attached to the complaint was a certified copy of a sentence order

---

1. The immediate suspension petition was filed under case number 14PDJ013.

2. The People's petition for immediate suspension was premised on Respondent's conduct in three client representations. Her criminal conviction for felony theft under count 29 was based on one of those representations. *See* Ex. S1. ¶¶ 13–14.

3. These matters, which were lodged under case numbers 13PDJ067 and 14PDJ013, were placed in abeyance when Respondent was transferred to disability inactive status.

4. Case numbers 13PDJ067 and 14PDJ013 remain pending.

issued by the Boulder County District Court. Respondent submitted an "Answer and Motion for Appointment of Counsel" on July 24, 2015. Three days later, the PDJ appointed Alexander R. Rothrock and Sara Van Deusen to serve as Respondent's counsel in this case.

The People moved for judgment on the pleadings on August 10, 2015, arguing that as a matter of law a theft conviction constitutes a violation of Colo. RPC 8.4(b) and C.R.C.P. 251.5(b).[5] Per C.R.C.P. 251.20(a), conviction of a crime is "conclusive proof of the commission of that crime" for disciplinary purposes. Respondent did not contest that her conviction, viewed in isolation, would establish a violation of these rules. Instead, she argued that the PDJ should not enter judgment because her criminal appeal remained pending. By order of September 10, 2015, the PDJ rejected Respondent's argument, entered judgment on the pleadings, and converted the disciplinary hearing to a sanctions hearing.

On October 29, 2015, the PDJ granted a joint motion in limine, ruling that the sanctions hearing could take place without Respondent present. In that motion, the parties stated that Respondent strongly desired not to participate in the hearing.

On November 16, 2015, a Hearing Board comprising Ted D. Gardenswartz and Jennifer H. Hunt, members of the bar, and the PDJ held a sanctions hearing pursuant to C.R.C.P. 251.18. Alan C. Obye represented the People, while Rothrock and Van Deusen appeared for Respondent, who did not attend. The Hearing Board considered testimony from David Stevens, Ph.D., the stipulated facts, and stipulated exhibit S1.

## II. *FINDINGS OF FACT*

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 17, 2010, under attorney registration number 41972. She is

thus subject to the jurisdiction of the Hearing Board in this disciplinary proceeding.[6]

The findings regarding Respondent's conviction are drawn from the stipulated facts and stipulated exhibit S1. Respondent was convicted of thirteen counts of theft in Boulder County District Court on April 24, 2015. Specifically, she was convicted of two counts of class-four felony theft of $1,000.00–$20,000.00; two counts of class-five felony theft of $5,000.00–$20,000.00; one count of class-six felony theft of $2,000.00–$5,000.00; five counts of class-one misdemeanor theft of $750.00–$2,000.00; and three counts of class-two misdemeanor theft of $300.00–$750.00.[7]

As just one example, the jury convicted Respondent of the following charge of class-five felony theft (count 9 of the criminal complaint):

That on or about March 01, 2012 to November 01, 2013 in, or triable in, the County of Boulder, State of Colorado Emily Elizabeth Cohen unlawfully, feloniously, and knowingly, without authorization or by threat or deception, obtained, retained, or exercised control over a thing of value, namely: U.S. Currency, of Tayde Jimenez and Oscar Gordillo, with the value of five thousand dollars or more but less than twenty thousand dollars, and intended to deprive Tayde Jimenez and Oscar Gordillo permanently of its use or benefit; in violation of section 18–4–401(a)(a), (2)(g), C.R.S.

The actions underlying the conviction took place between early 2011 and early 2014. The victims were Respondent's immigration clients or individuals who paid her legal fees on behalf of immigration clients.

Respondent was sentenced to six years in the custody of the Department of Corrections and ten years of probation, including one year of work release, to be served consecutively to her imprisonment. Her sentence included the condition that she

---

5. *See People v. Barnthouse*, 948 P.2d 534, 537 (Colo.1997) (upholding a hearing board's determination that theft violated Colo. RPC 8.4(b) and the predecessor to C.R.C.P. 251.5(b), which stated that a violation of state or federal criminal laws constituted grounds for lawyer discipline).

6. *See* C.R.C.P. 251.1(b).

7. Respondent was charged with fifty-four counts. She was acquitted of seven counts, the prosecutor dismissed thirty counts before trial, and a mistrial was declared on one count.

comply with all terms and conditions of that probation, mental health [evaluation and treatment], take required medications, no contact with victims, not work as an attorney or paralegal while on probation, remain in Colorado and not be allowed to transfer probation to another state, work on case plan with probation officer, pay costs and restitution.

Although the April 2015 sentence order indicated that the amount of restitution was to be determined in ninety days, the parties in the disciplinary case did not know as of the date of the sanctions hearing whether restitution had been established.

At the sanctions hearing, David Stevens, Ph.D., a clinical psychologist, testified about his evaluation of Respondent. Respondent was referred to him in January 2015 in connection with her disability proceeding. He met with her on three occasions, in January, February, and March 2015. In addition, he interviewed Respondent's previous mental health treatment providers and reviewed an array of relevant documents.

Dr. Stevens diagnosed Respondent with Bipolar 2 Disorder and Posttraumatic Stress Disorder ("PTSD"). He explained that Bipolar 2 Disorder patients have marked affective instability, typically characterized by long periods of significant depression, elevated anxiety, suicidal ideation, inability to concentrate, and sleep disturbance. These periods may be punctuated by brief periods of hypomania, which involves a flight of ideas, reduced need for sleep, impaired judgment, and an excessively expansive or elevated view of one's capacities.

People with PTSD, Dr. Stevens said, endure a series of "arousal" symptoms, whereby they remain in a state of constant alert. In this state, patients anticipate some negative event consistent with their history, and they experience tension, low-grade paranoia, and difficulty in differentiating the past from present. In other words, patients tend to misconstrue present circumstances as posing dangers associated with past experiences.

Dr. Stevens's diagnoses were based in part on Respondent's developmental history, which he described as "very chaotic." Among other stresses, Respondent was abandoned by her mother for a time in infancy, she was shuffled between households throughout her childhood, and she had limited contact with her alcoholic father, who periodically reviled her. This history, Dr. Stevens said, predisposed her to PTSD.

Respondent began taking medications to address her mental health in late adolescence, after she voiced suicidal thoughts. Since that time, she has taken medications on an episodic basis, with mixed responses. She has, in "chaotic" fashion, seen a variety of mental health treatment providers, to whom she reported a history consistent with that she reported to Dr. Stevens. Dr. Stevens is aware of no evidence that Respondent has recovered from her mental health conditions since he last saw her this past March.

### III. SANCTIONS

The American Bar Association's *Standards for Imposing Lawyer Sanctions* ("ABA *Standards*")[8] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[9] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.

#### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* According to the ABA *Standards*, when a lawyer violates Colo. RPC 8.4(b), the lawyer violates her duty to the public to maintain her personal integrity.

*Mental State:* In convicting Respondent of theft, the jury was required to find that she acted with a knowing state of mind and that she intended to permanently deprive others of the use or benefit of their money. Because the jury reached that finding beyond a

8. Found in ABA *Annotated Standards for Imposing Lawyer Sanctions* (2015).

9. *See In re Roose*, 69 P.3d 43, 46–47 (Colo.2003).

reasonable doubt after an adversary process, we adopt the jury's determination.[10]

*Injury:* We likewise adopt the jury's determination that Respondent deprived numerous clients of large sums of money. We conclude that Respondent's dishonesty caused her clients severe injury. In addition, the Hearing Board finds that Respondent's widely reported misconduct has seriously undermined Coloradans' trust in the legal profession.

## ABA *Standards* 4.0–7.0—Presumptive Sanction

The parties agree that disbarment is the presumptive sanction for Respondent's misconduct under ABA *Standard* 5.11. That standard provides that disbarment is generally appropriate when a lawyer engages in serious criminal conduct of which a necessary element is misappropriation or theft.

## ABA *Standard* 9.0—Aggravating and Mitigating Factors

 Aggravating factors are considerations that may justify an increase in the presumptive discipline to be imposed, while mitigating factors may justify a reduction in the severity of the sanction.[11] The Hearing Board considered the parties' arguments as to the following aggravating and mitigating circumstances. As explained below, we apply seven aggravators, one of which carries great weight and three of which carry relatively little weight. We also apply two mitigators, one of which is entitled to great weight.

*Prior Disciplinary Offenses—9.22(a):* On August 22, 2011, the PDJ approved a conditional admission of misconduct and privately admonished Respondent. We thus consider this factor in aggravation.

10. *See* C.R.C.P. 251.20(a) (providing that a certified copy of a judgment of conviction is conclusive proof of the conviction and of the commission of the crime for disciplinary purposes).

11. *See* ABA *Standards* 9.21 & 9.31.

12. This is not an instance in which the lawyer denied wrongdoing in an effort to defend a disciplinary hearing, in which case we might agree

*Dishonest or Selfish Motive—9.22(b):* By definition, Respondent's theft of funds was dishonest—a factor we likewise apply in aggravation.

*Pattern of Misconduct—9.22(c):* We accord great weight in aggravation to Respondent's extensive pattern of misappropriating client funds, a pattern that spanned three full years.

*Multiple Offenses—9.22(d):* The People urge us to apply this factor, but we decline to do so. Although Respondent committed many acts of theft, she was not charged in this matter with other types of professional misconduct. Moreover, we have already accounted for Respondent's sustained pattern of misconduct under ABA *Standard* 9.22(c), and it would be unfair to premise application of two aggravators on the same reasoning.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* Despite having the opportunity to participate in the sanctions hearing, Respondent declined to do so, and the record contains no evidence that she has recognized her wrongdoing. On the other hand, the People have not affirmatively demonstrated that Respondent has refused to acknowledge her misdeeds. We thus apply relatively little weight in aggravation to this factor.[12]

*Vulnerability of Victims—9.22(h):* The parties stipulate that Respondent's victims were either immigration clients or those paying her on behalf of immigration clients. The Hearing Board recognizes that, as a logical generalization, immigration clients tend to be a vulnerable population,[13] and Respondent does not object to application of this factor. Because of the limited evidence about her particular clients, however, we assign relatively little significance to this factor.

with Respondent that it would be inappropriate to apply this aggravator. *See* ABA *Annotated Standards for Imposing Lawyer Sanctions* 434 (2015).

13. *See, e.g., Cincinnati Bar Ass'n v. Sigalov,* 133 Ohio St.3d 1, 975 N.E.2d 926, 940 (2012); *Flowers v. Bd. of Prof'l Responsibility,* 314 S.W.3d 882, 899–900 (Tenn.2010).

*Indifference to Making Restitution— 9.22(j):* Respondent argues this factor should not apply. Her counsel notes that she has been unable to earn money as a lawyer since her license was immediately suspended in March 2014, and she is now imprisoned. It is noteworthy that she carried out many of her thefts in 2012 or 2013, and it could be argued that she had some opportunity to repay those victims before her suspension. We find that this factor applies in aggravation but merits relatively little weight given the limited evidence and the circumstances that have limited her ability to earn income.

*Illegal Conduct—9.22(k):* That Respondent's conduct was illegal counts in aggravation.

*Personal or Emotional Problems—9.32(c):* Dr. Stevens provided persuasive testimony that Respondent has suffered from serious psychological problems for many years, and the People concede that Respondent should receive some credit in mitigation under this standard. The Hearing Board applies this factor but, given the lack of evidence that Respondent's emotional problems caused her misconduct, we assign this mitigator only moderate weight.[14]

*Imposition of Other Penalties or Sanctions—9.32(k):* Although the People believe this factor merits limited weight, Respondent argues that the Hearing Board should heavily weigh this mitigator. Indeed, she believes this factor should outweigh the numerous aggravating factors so as to justify imposition of suspension rather than disbarment. She characterizes her criminal sentence as very significant, noting that she will not only serve a six-year prison sentence but will also be on probation for ten years and will be required to make restitution. She may not reapply to the bar until she completes both her prison sentence and her probation, at which time she must pass the written bar examination.[15] The Hearing Board finds that the criminal penalties imposed against Respondent are considerable and that this factor therefore merits considerable weight.[16] We do not, however, assign to the factor the overwhelming weight suggested by Respondent.

### Analysis Under ABA *Standards* and Case Law

The Colorado Supreme Court has directed the Hearing Board to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors.[17] We are thus mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[18] Though prior cases are helpful by way of analogy, hearing boards must determine the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

Here, the People argue that Respondent must be disbarred. In the People's estimation, this is as clear a case for disbarment as any hearing board is likely to see. If this Hearing Board were not to disbar Respondent, the People say, the disciplinary system would look broken and absurd to the public, severely undermining the public's confidence

---

14. *See In re Cimino,* 3 P.3d 398, 402 (Colo.2000) (determining that the presence of personal or emotional problems was not a significant factor because the problems did not cause or affect the onset of the misconduct).

15. *See* Ex. S1 (the sentence order barring Respondent from working as a lawyer during her probation); C.R.S. § 18–1.3–401(3) ("Every person convicted of a felony . . . shall be disqualified . . . from practicing as an attorney in any of the courts of this state during the actual time of confinement or commitment to imprisonment or release from actual confinement on conditions of probation."); *In re Miranda,* 289 P.3d 957, 960–61 (Colo.2012) (applying C.R.S. § 18–1.3–401(3)).

16. In applying this factor, we do not consider the requirement that Respondent pay restitution. This requirement should not be viewed as a penalty because these funds were never hers in the first instance. *See also* ABA *Standard* 9.4(a) (providing that compelled restitution is neither a mitigating factor nor an aggravating factor).

17. *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

18. *In re Attorney F.,* 285 P.3d at 327 (quoting *In re Rosen,* 198 P.3d 116, 121 (Colo.2008)).

in the legal profession and its system of self-regulation.

Respondent, on the other hand, urges the Hearing Board to impose a three-year suspension. Citing *In re Kearns*,[19] she argues that the mitigating factor of other penalties merits the utmost weight and that her emotional problems also deserve recognition. Noting that the primary purpose of the attorney discipline system is to protect the public rather than to punish lawyers, she asserts that a three-year suspension would provide an equivalent level of public protection to disbarment under the circumstances presented here.

In evaluating the parties' positions, the Hearing Board examines case law involving analogous facts. A seminal case is *In re DeRose*, involving a lawyer who purchased numerous money orders for a client with the dishonest intent to circumvent reporting requirements.[20] Upon pleading guilty to felony charges, the lawyer served a four-month federal sentence.[21] In considering the appropriate disciplinary sanction, the *DeRose* court commented that "conduct constituting a felony and evidencing dishonesty may result in disbarment. This is especially true when the conduct is intentional, involves a dishonest motive, and is coupled with previous discipline."[22] The Colorado Supreme Court explained that prior decisions suspending attorneys for felonies involved distinguishable circumstances.[23] For instance,

in *In re Elinoff*, a suspension of three years was deemed appropriate for a lawyer convicted of bribery, a class-three felony, because the lawyer had neither prior discipline nor a dishonest motive, and a reoccurrence of misconduct seemed unlikely.[24] In *DeRose*, even though three mitigating factors (and three aggravators) were present, the Colorado Supreme Court disbarred the lawyer.[25]

*DeRose* strongly suggests that disbarment is warranted in the present case. Respondent's conduct was intentional, motivated by dishonesty, and coupled with previous discipline.[26] In addition to the disbarment cases cited in the *DeRose* decision, the Hearing Board has identified a number of other decisions consistent with *DeRose*.[27] We are aware of no cases in which the Colorado Supreme Court has suspended a lawyer under the type of facts presented here.

In reviewing case law, we have also identified two themes that we believe to be relevant to our sanctions analysis. First, the Colorado Supreme Court has repeatedly stressed that honesty is the core value of the legal profession.[28] As most memorably articulated in the *In re Pautler* decision, "Lawyers serve our system of justice, and if lawyers are dishonest, then there is a perception that the system, too, must be dishonest. Certainly, the reality of such behavior must be abjured so that the perception of it may diminish."[29] Respondent's convictions in the

19. 991 P.2d 824, 825–27 (Colo.1999) (heavily weighing ABA *Standard* 9.32(k) in publicly censuring a lawyer who was convicted of felony vehicular assault and driving under the influence and who was sentenced to three years' imprisonment and two years' parole).

20. 55 P.3d 126, 127–28 (Colo.2002).

21. *Id.* at 128.

22. *Id.* at 130 (citing *People v. Chappell*, 927 P.2d 829, 830–31 (Colo.1996) (disbarring a previously disciplined attorney who committed a felony by intentionally aiding a client in violating a child custody order); *People v. Viar*, 848 P.2d 934, 936 (Colo.1993) (disbarring an attorney for committing bribery, a class-three felony); and *People v. Schwartz*, 814 P.2d 793, 794–95 (Colo.1991) (disbarring an attorney after he was convicted of bankruptcy fraud)).

23. *Id.*

24. *Id.* (citing 22 P.3d 60, 64 (Colo.2001)).

25. *Id.* at 130–31.

26. *Id.* at 130.

27. *See, e.g., People v. Nearen*, 952 P.2d 371, 372 (Colo.1998) (disbarring a lawyer who was convicted of felony securities fraud and felony money laundering, even though the mitigating factor of lack of prior discipline applied); *People v. Frye*, 935 P.2d 10, 11 (Colo.1997) (disbarring a lawyer who was convicted of conspiracy to commit felonies involving securities fraud, even though the mitigating factor of lack of prior discipline applied).

28. *DeRose*, 55 P.3d at 131.

29. 47 P.3d 1175, 1179 (Colo.2002).

present case are premised upon the quintessentially dishonest conduct of theft.

■ Second, disciplinary violations that directly relate to client representation generally warrant more severe sanctions than violations tangentially related or unrelated to a lawyer's practice. Turning again to *In re Elinoff*, the Colorado Supreme Court refused to depart downward from a hearing board's recommended sanction for the lawyer who committed bribery.[30] In so doing, the court emphasized that the conduct of the lawyer—who attempted to bribe police officers on behalf of his client—"was directly related to his practice of law." [31] Here, of course, Respondent committed theft in the course of client representations.

The Hearing Board has carefully considered Respondent's arguments that a three-year suspension would not jeopardize the public and that the mitigation here justifies a suspension. Only under particularly compelling circumstances can mitigating factors be afforded the overwhelming weight that Respondent asks us to assign.[32] We do not find the mitigators so compelling here. Even if we did, the mitigation would remain overshadowed by the prevalence of aggravating factors.[33]

■■ We also recognize that our primary task is to protect the public, not punish Respondent,[34] and we understand that Respondent will be in no position to endanger future clients for many years if her sentence remains intact. We believe, however, that the public is protected not only by forbidding untrustworthy lawyers to practice law but also by consistently upholding and communicating the standards to which lawyers will be held. Although Respondent is correct that the ABA *Standards* themselves do not specifically carve out a role in sanctions analyses for considering the message sent by imposition of certain sanctions, we find that the Colorado Supreme Court has identified public confidence as an appropriate consideration. For instance, in *People v. Buckles*, the Colorado Supreme Court disbarred a lawyer who had committed felony theft, explaining that "[m]isuse of funds by a lawyer strikes at the heart of the legal profession by destroying public confidence in lawyers," and that "[t]he public has a right to expect that one who engages in such professional misconduct shall be severely disciplined." [35]

In sum, given the presumptive sanction and the prevalence of aggravating factors

---

30. 22 P.3d at 64.

31. *Id.; see also People v. Buckley*, 848 P.2d 353, 354 (Colo.1993) (indicating that whether lawyer misconduct was directly related to the practice of law is relevant to the imposition of sanctions); *People v. Ebbert*, 925 P.2d 274, 280 (Colo.1996) (stating that whether misconduct was directly related to the practice of law is relevant to the determination of whether retroactive discipline is appropriate); *People v. Goldstein*, 887 P.2d 634, 644 (Colo.1994) (same); *see also In re Scanio*, 919 A.2d 1137, 1144 (D.C.2007); *In re Perez-Pena*, 161 Wash.2d 820, 168 P.3d 408, 415 (2007); *Fla. Bar v. Baker*, 810 So.2d 876, 881 (Fla.2002); *In re Kennedy*, 542 A.2d 1225, 1230 (D.C.1988).

32. *See, e.g., People v. Lujan*, 890 P.2d 109, 110-13 (Colo.1995) (in sanctioning a lawyer who stole from her law firm but who was not convicted for that conduct, assigning substantial weight to the fact that she had developed a mental disorder after being sexually assaulted during an overseas trip); *People v. Torpy*, 966 P.2d 1040, 1044 (Colo.1998) (refusing to deviate from the presumptive sanction of disbarment for a lawyer who knowingly misappropriated client funds, even though during the relevant period the law-

yer had experienced an exceptionally hostile divorce, a serious car accident necessitating his use of a wheelchair, bankruptcy, alcohol abuse, and a severe heart attack).

33. We are not swayed by the *Kearns* decision, which Respondent cites. In that matter, which involved vehicular assault and driving under the influence, rather than crimes of dishonesty, at least five mitigating factors were present and no aggravators were found. 991 P.2d at 826. Although the Colorado Supreme Court gave significant consideration to ABA *Standard* 9.32(k), there was no suggestion that the *Kearns* court would have found *Standard* 9.32(k) so weighty as to overcome countervailing aggravators. *Id.* at 827.

34. *See People v. Richardson*, 820 P.2d 1120, 1121 (Colo.1991).

35. 673 P.2d 1008, 1012 (Colo.1984); *see also People v. Brown*, 726 P.2d 638, 641 (Colo.1986) (stressing the court's "responsibility to protect the public interest by ensuring continued confidence of the people of this state in ... the integrity of the legal profession and the judicial system").

here, the ABA *Standards* plainly call for disbarment. This calculus is only reinforced by Colorado Supreme Court case law, which signals that theft—particularly theft from clients—must be met with the harshest sanction. We therefore disbar Respondent.

## IV. *CONCLUSION*

Respondent's repeated theft from her immigration clients ranks among the gravest possible examples of attorney misconduct. She seriously damaged her clients and shook the public's confidence in the legal profession. Notwithstanding her emotional problems and her lengthy prison sentence, her misconduct demands disbarment.

## V. *ORDER*

The Hearing Board therefore **ORDERS:**

1. **EMILY E. COHEN,** attorney registration number 41972, is **DIS- BARRED.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [36]

2. To the extent applicable, Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)–(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent **SHALL** file with the PDJ, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **MUST** file any posthearing motion or application for stay pending appeal with the Hearing Board **on or before February 1, 2016.** Any response thereto **MUST** be filed within seven days.

5. Respondent **SHALL** pay the costs of this proceeding. The People **SHALL** file a statement of costs **on or before February 25, 2016.** Any response thereto **MUST** be filed within seven days.

---

**36.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.