The PEOPLE of the State of
Colorado, Complainant

v.

James Michael ZARLENGO, Respondent.

No. 15PDJ054.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Feb. 4, 2016.

### OPINION AND DECISION IMPOSING SANCTIONS UNDER C.R.C.P. 251.19(b)

### I. *PROCEDURAL HISTORY*

On July 9, 2015, Erin R. Kristofco, Office of Attorney Regulation Counsel ("the People"), filed a petition requesting that Respondent be immediately suspended from the practice of law under C.R.C.P. 251.8. William R. Lucero, the Presiding Disciplinary Judge ("the PDJ"), issued a show cause order, to which Respondent filed a response on July 23, 2015. Four days later, the PDJ issued a report to the Colorado Supreme Court finding reasonable cause to believe that Respondent had been convicted of felony theft and had caused immediate and substantial private harm. The Colorado Supreme Court immediately suspended Respondent on July 29, 2015.

The People filed their complaint on August 15, 2015, alleging that Respondent violated Colo. RPC 8.4(b) and C.R.C.P. 251.5(b). Respondent answered on August 26, 2015, denying that he committed the theft to which he pleaded guilty.

On December 17, 2015, a Hearing Board comprising Henry R. Reeve and Boston H. Stanton Jr., members of the bar, and the PDJ held a disciplinary hearing under C.R.C.P. 251.18. Kristofco represented the People, while Respondent appeared pro se. The Hearing Board considered Respondent's testimony and the People's exhibits 1–5.[1]

### II. *FINDINGS OF FACT AND RULE VIOLATIONS*

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 25, 1983, under attorney registration number 12987. He is thus subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in this disciplinary proceeding.[2]

### Findings of Fact

On April 30, 2013, Respondent was charged in Jefferson County with twenty-five counts of theft, including thirteen charges of class-three felony theft upon an at-risk victim.[3] The complaint was premised upon Respondent's actions while serving as conservator for his mother, Elaine Zarlengo, and as trustee of a trust for whom Respondent's cousin, Norman Tolleson, was the beneficiary.[4] Both victims were "at-risk adults" within the meaning of C.R.S. section 18–6.5–

---

1. Respondent stipulated to admission of exhibits 1–5, though not to their underlying truth. The PDJ ruled Respondent's exhibits A–O inadmissible because Respondent never disclosed them to the People as required by sections III(7) and IV(4) of the PDJ's scheduling order dated September 8, 2015. The exhibits were also otherwise inadmissible on hearsay, relevancy, or other grounds, but the PDJ considered Respondent's offer of proof as to the contents of exhibits A–O. The exhibits included photos of his family and his homes, his military records, character letters submitted in the sentencing phase of his criminal case, an appeal brief he filed in a probate case that preceded his criminal case, an accounting of monetary penalties he suffered as a result of the probate and criminal cases, and extensive documentation purportedly showing that he did not

engage in theft and that his other family members did engage in wrongdoing vis-à-vis the trust and conservatorship. After ruling the exhibits inadmissible, the PDJ instructed the Hearing Board not to consider Respondent's statements about the exhibits' contents. The Hearing Board did, however, consider Respondent's independent direct testimony about events and circumstances that were also reflected in the rejected exhibits.

2. *See* C.R.C.P. 251.1(b).

3. Ex. 1.

4. *See* Ex. 3 at 9:1–2; 13:2–3; 14:8–23; 15:2–5.

102(2) because they were over seventy years of age.[5] In addition, Respondent's mother was mentally incapacitated.[6]

Respondent hired counsel in his defense and engaged in plea negotiations. The prosecution agreed not to seek imprisonment if Respondent paid $75,000.00 in restitution before sentencing.[7] Respondent then filed a petition to enter a guilty plea on July 14, 2014.[8] In the petition, he proposed to plead guilty to the amended first count of theft—at-risk victim, C.R.S. sections 18–6.5–103(5) and 18–4–401(1).[9]

> Count 1 provided:
> On or between July 16, 2005 and January 15, 2006, [Respondent] unlawfully, feloniously and knowingly obtained or exercised control over a thing of value, namely: money ... with the value of five hundred dollars or more, without authorization, or by threat or deception, and intended to deprive [the victims] permanently of its use or benefit.... [10]

The count originally named Elaine Zarlengo and the Elaine Zarlengo Conservatorship as the only victims, but it was later amended to include Norman Tolleson as a victim.[11]

Respondent acknowledged in his petition that the elements of this crime are:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly
   a. obtained, retained, or exercised control over
   b. anything of value

c. which was the property of another who was an at-risk elder,

d. without authorization or by threat or deception, and

4. with intent to permanently deprive the other person of the use or benefit of the thing of value, and

5. an element or portion of the offense was committed in the presence of the victim, and

[6]. the value of the thing involved was over five hundred dollars.[12]

On July 14, 2014, the district court conducted a hearing on Respondent's petition. The court accepted Respondent's guilty plea after he acknowledged that there was a "factual basis to [his] plea." [13] On August 25, 2014, the court sentenced him to one year of probation and noted that he had paid $75,000.00 in restitution.[14]

### Rule Violations

The Hearing Board concludes without hesitation that Respondent violated Colo. RPC 8.4(b) and C.R.C.P. 251.5(b). As noted above, these rules establish that it is professional misconduct and grounds for discipline for a lawyer to commit a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. Per C.R.C.P. 251.20(a), conviction of a crime is "conclusive proof of the commission of that crime" for disciplinary purposes. There can be no doubt that Respondent's conviction of theft reflects adversely on his honesty.[15]

---

5. *See* Ex. 2 at 3.

6. Ex. 3 at 14:25; 15:1–2.

7. Ex. 2 at 4.

8. Ex. 2.

9. Ex. 2 at 2.

10. Ex. 1 at 3.

11. Ex. 3 at 9:1–2; 13:2–3. The only other amendment to the count was to excise the allegation that Respondent stole the specific amount of $4,075.42. Ex. 3 at 9:3–10. The prosecutor indicated that this amendment was made because "the only dollar amount needed for the count was that it be greater than $500.00." Ex. 3 at 9:6–8.

12. Ex. 2 at 3.

13. Ex. 3 at 18:8–11; 23:16.

14. Ex. 4.

15. *See, e.g., People v. Barnthouse*, 948 P.2d 534, 537 (Colo.1997) (upholding a hearing board's determination that theft violated Colo. RPC 8.4(b) and the predecessor to C.R.C.P. 251.5(b), which stated that a violation of state or federal criminal laws constituted grounds for lawyer discipline).

## Respondent's Testimony

At the disciplinary hearing, Respondent testified about his personal and professional background and the facts surrounding his conviction. We take no position as to his assertions about the circumstances underlying his criminal matter, including his insistence that he did not intentionally take funds from his mother or cousin, because the certified copy of his conviction conclusively establishes his commission of theft under C.R.C.P. 251.20(a). On all other matters, we found Respondent's testimony credible. The People did not introduce any evidence or elicit any cross-examination that impeached his credibility.

Respondent earned his bachelor's degree from the University of Colorado and his law degree from the University of Denver. Upon gaining admission to the bar in 1983, he worked on several civil cases for his father, who was also a lawyer.

After a spell working in the film industry in California, Respondent joined the U.S. Air Force. He received a commission in the Judge Advocate General Corps ("JAG") in 1987. He served in a variety of positions and locations in JAG, including military assignments during the Persian Gulf War. Much of his work involved military administrative law. During his years of service, Respondent maintained an active Colorado law license but did not represent Colorado clients, except for providing limited assistance to military members as part of his charge in JAG. He retired through an honorable discharge in 2009, having attained the rank of colonel. Since his retirement he has not practiced law, nor does he plan to do so again.

According to Respondent, he served as his mother's conservator from 2005 to mid–2008 and again from mid–2009 until 2011. His sister, who had been trustee for the Norman Tolleson trust, died three days after Respondent retired from the military in 2009. As a result, management of his cousin's trust was "thrown into [his] lap," which occasioned significant stress. As Respondent tells it, he may have been a "bad bookkeeper," but he stole nothing from his mother or cousin. Instead, he said, he did the best he could for his family. As noted above, however, we do not accept Respondent's version of how he carried out his fiduciary duties.

A probate case was filed against Respondent involving his actions as his mother's conservator and his cousin's trustee, and judgment was entered against him. While the details of the probate case are murky, Respondent testified that the criminal case was patterned after the facts of the probate case.

When asked why he pleaded guilty in the criminal case, Respondent explained that the complaint charged him with twenty-five felonies premised upon hundreds of transactions spanning the 2005–2011 timeframe. He thus believed his chances of complete exoneration were very slim. He decided to plead guilty to avoid having to serve a lengthy prison sentence. He testified that, as a factual basis for his plea, he identified one transaction in which he received a double reimbursement from his cousin's trust. If he had been hyper-vigilant in fulfilling his fiduciary duties, he said, he would have discovered this erroneous reimbursement. He thus claimed there was a basis for his guilty plea, even though he did not believe the mental state requirement was satisfied as to this transaction. At the disciplinary hearing, he testified that he knows it was wrong to falsely claim guilt, but he felt he had no other choice.

Respondent offered testimony about three mitigating factors in particular. The first is imposition of other penalties. In the probate case, judgments were entered against two of the three homes Respondent owned, and he thus lost these homes. In addition, his savings and checking accounts were garnished and his federal retirement account was depleted to pay restitution.

Second, Respondent testified that he developed troubling psychological symptoms toward the end of his career in the Air Force, including inability to sleep and a reduced level of functioning. Around 2010, the U.S. Department of Veterans Affairs diagnosed him with Posttraumatic Stress Disorder ("PTSD") and rated him as 100% disabled. Respondent attributes his PTSD to stresses of his work in the military, such as visiting burn units. He believes he is now incapable

of practicing law, saying he suffers from a lack of confidence. Indeed, the Hearing Board's observations suggest that Respondent struggled to navigate the disciplinary hearing, possibly due to his PTSD. He said he is not taking medicine or receiving therapy to treat this condition.

Finally, Respondent said that he has performed significant volunteer work in recent years. Since about 2008, he has volunteered with an organization that advocates for veterans with PTSD who are facing criminal charges. In that capacity, he has sought to identify opportunities for the veterans to obtain counseling before entering the criminal justice system. In recent years he also has volunteered for many organizations, including a scholarship committee, a church, a Habitat Humanity ReStore, and an experimental aircraft association that provides aviation opportunities for children.

### III. SANCTIONS

■ The American Bar Association's *Standards for Imposing Lawyer Sanctions* ("ABA *Standards*")[16] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[17] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* The ABA *Standards* indicate that when a lawyer violates Colo. RPC 8.4(b), the lawyer breaches his duty to the public to maintain his personal integrity.

*Mental State:* Respondent's guilty plea establishes that he knowingly took funds with the intent to permanently deprive his mother and cousin of those funds. Under C.R.C.P.

251.20(a), the mental state underlying Respondent's criminal conviction is conclusively established for disciplinary purposes.

*Injury:* By failing to maintain personal integrity, Respondent damaged public confidence in the legal profession. The Hearing Board also finds that Respondent's dishonesty caused his mother and cousin financial injury.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

■ Disbarment is the presumptive sanction for Respondent's misconduct under ABA *Standard* 5.11. That standard provides that disbarment is generally appropriate when a lawyer engages in serious criminal conduct of which a necessary element is theft.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating factors are considerations that may justify an increase in the presumptive discipline to be imposed, while mitigating factors may justify a reduction in the severity of the sanction.[18] The Hearing Board considered the parties' arguments as to the following aggravating and mitigating circumstances. As explained below, we apply five aggravators and four mitigators, two of which are entitled to comparatively little weight.

*Dishonest or Selfish Motive—9.22(b):* By definition, Respondent's theft of funds was dishonest—a factor we consider in aggravation.

*Pattern of Misconduct—9.22(c):* The People urge us to apply this aggravating factor on grounds that Respondent served as a conservator and trustee for many years. That he served in these capacities for a lengthy period does not, however, establish that he engaged in wrongdoing during that entire duration. Moreover, his criminal conviction does not establish that he committed theft on more than one occasion. Instead, he

---

**16.** Found in ABA *Annotated Standards for Imposing Lawyer Sanctions* (2015).

**17.** *See In re Roose,* 69 P.3d 43, 46–47 (Colo. 2003).

**18.** *See* ABA *Standards* 9.21 & 9.31.

pleaded guilty to one count of theft committed "[o]n or between July 16, 2005[,] and January 15, 2006." [19] We therefore find no evidence on which to premise application of this aggravating factor.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* Respondent has steadfastly maintained his innocence, acknowledging only that he did not carefully discharge his fiduciary duties. Although Respondent appears to genuinely believe he did not commit theft, he chose to admit his guilt in the criminal case. We cannot ignore the fact that he made inconsistent representations before two different tribunals, and we thus apply this factor in aggravation.

*Vulnerability of Victims—9.22(h):* Respondent's conviction establishes that both of his victims were "at-risk adults" because of their advanced age. The evidence also indicates that Respondent's mother was mentally incapacitated. We therefore apply this factor.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was licensed in 1983 and practiced law for more than thirty years. We must consider this factor in aggravation.

*Illegal Conduct—9.22(k):* It is an aggravating factor that Respondent's theft was not only dishonest but also illegal.

*Absence of Prior Disciplinary History—9.32(a):* Respondent practiced law for three decades with no blemishes on his record.[20] We consider this fact in mitigation.

*Personal or Emotional Problems—9.32(c):* Respondent provided compelling testimony that he has suffered from PTSD for many years. He also said that he experienced stress because his retirement coincided with his assumption of management responsibilities for his cousin's trust. Yet this stress arose after the timeframe of his theft. Moreover, he did not substantiate when he developed PTSD or whether the condition caused or contributed to his misconduct. We thus assign this mitigator only moderate weight.[21]

*Character or Reputation—9.32(g):* Respondent called no witnesses to testify on his behalf. He did provide persuasive testimony that he has performed considerable volunteer work for a number of years. Further, his honorable discharge as a colonel indicates that he served his country with distinction as a military officer. We consider this factor in mitigation but accord it relatively little weight given the absence of any evidence to corroborate Respondent's own testimony.

*Imposition of Other Penalties or Sanctions—9.32(k):* Respondent asserts that he has suffered substantial penalties as a result of his probate case and criminal conviction. But we lack evidence of the monetary penalties and legal costs he has borne, aside from the fact that he paid $75,000.00 in restitution. We give some consideration to the fact that Respondent completed a year of probation after his conviction, but this penalty was not particularly onerous. Moreover, we find it inappropriate to consider Respondent's payment of restitution in mitigation.[22] We thus apply relatively little weight in mitigation to this factor.

## Analysis Under ABA *Standards* and Case Law

The Colorado Supreme Court has directed the Hearing Board to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors.[23] We recognize that "individual circumstances

---

**19.** Ex. 1 at 3.

**20.** Respondent volunteered that he was convicted of driving under the influence in 2008, but he was not disciplined for this misconduct.

**21.** *See In re Cimino,* 3 P.3d 398, 402 (Colo.2000) (determining that the presence of personal or emotional problems was not a significant factor because the problems did not cause or affect the onset of the misconduct).

**22.** *See* ABA *Standard* 9.4(a) (providing that compelled restitution is neither a mitigating factor nor an aggravating factor).

**23.** *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[24] Though prior cases are helpful by way of analogy, we must determine the appropriate sanction based on the particular facts before us.

The People ask the Hearing Board to disbar Respondent. According to the People, the ABA *Standards* and case law call for disbarment, and the public has a right to expect that a lawyer convicted of theft will permanently lose his license. Respondent, meanwhile, suggests that the Hearing Board consider a less severe sanction.

We agree with the People's analysis. Under the ABA *Standards*, the presumptive sanction is disbarment. A suspension would be warranted only if mitigating factors significantly outweighed aggravators or if case law otherwise justified a more lenient sanction. Here, Respondent has not established mitigation that supports a downward departure from the presumptive sanction.

Moreover, imposition of disbarment is consistent with Colorado Supreme Court case law. In numerous cases, the Colorado Supreme Court has disbarred lawyers convicted of crimes involving dishonesty. Although some such decisions have involved lawyers with a history of prior discipline,[25] many lawyers with a clean disciplinary record have suffered the same consequences.[26]

We also note that the Colorado Supreme Court has singled out honesty as the legal profession's core value.[27] Dishonesty on the part of lawyers undermines the public's trust in the legal profession and, indeed, in the legal system itself.[28] Here, of course, Respondent's conviction was premised upon dishonest conduct.

In sum, to suspend rather than disbar Respondent would discount the seriousness of his felony theft from at-risk victims. Applicable standards and case law indicate that his criminal conviction for theft must be met with the harshest possible disciplinary sanction.[29] We therefore disbar Respondent.[30]

## IV. CONCLUSION

Respondent pleaded guilty to felony theft from at-risk victims. The mitigating factors here do not justify departure from the presumptive sanction of disbarment, and the Colorado Supreme Court has made clear that crimes of dishonesty cannot be tolerated

---

24. *In re Attorney F.*, 285 P.3d at 327 (quoting *People v. Rosen*, 198 P.3d 116, 121 (Colo.2008)).

25. *See, e.g., In re DeRose*, 55 P.3d 126, 127–31 (Colo.2002) (disbarring a previously disciplined lawyer who was convicted of felony charges involving structuring transactions to evade reporting requirements); *People v. Chappell*, 927 P.2d 829, 830–31 (Colo.1996) (disbarring a previously disciplined attorney who committed a felony by intentionally aiding a client in violating a child custody order).

26. *See, e.g., People v. Nearen*, 952 P.2d 371, 372 (Colo.1998) (disbarring a lawyer who was convicted of felony securities fraud and felony money laundering, even though the lawyer had not previously been disciplined); *People v. Frye*, 935 P.2d 10, 11 (Colo.1997) (disbarring a lawyer who was convicted of conspiracy to commit felonies involving securities fraud, even though the lawyer had not previously been disciplined); *People v. Viar*, 848 P.2d 934, 936 (Colo.1993) (disbarring an attorney for committing bribery, a class-three felony, even though the lawyer had not previously been disciplined); *People v. Schwartz*, 814 P.2d 793, 794–95 (Colo.1991) (disbarring an attorney after he was convicted of bankruptcy fraud, even though the lawyer had not previously been disciplined).

27. *DeRose*, 55 P.3d at 131; *In re Pautler*, 47 P.3d 1175, 1179 (Colo.2002).

28. *See In re Pautler*, 47 P.3d at 1179.

29. *See People v. Buckles*, 673 P.2d 1008, 1012 (Colo.1984) ("[m]isuse of funds by a lawyer strikes at the heart of the legal profession by destroying public confidence in lawyers," so "[t]he public has a right to expect that one who engages in such professional misconduct shall be severely disciplined").

30. We almost certainly would have reached the same conclusion if Respondent's exhibits had been admitted. He sought to introduce many of these exhibits in an effort to establish that he did not commit theft, but C.R.C.P. 251.20(a) precludes the Hearing Board from looking behind Respondent's conviction. Respondent's other exhibits were largely irrelevant to the mitigating factors set forth in the ABA *Standards*. In addition, the Hearing Board has in fact given Respondent credit in mitigation for some of the factors he hoped to establish through his exhibits.

among members of the bar. The Hearing Board thus concludes that Respondent must surrender his law license.

## V. *ORDER*

The Hearing Board therefore **ORDERS**:

1. **JAMES MICHAEL ZARLENGO**, attorney registration number 12987, is **DISBARRED**. The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment."[31]

2. To the extent applicable, Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)–(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent **SHALL** file with the PDJ, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **MUST** file any posthearing motion or application for stay pending appeal with the Hearing Board **on or before February 25, 2016.** Any response thereto **MUST** be filed within seven days.

5. Respondent **SHALL** pay the reasonable and necessary costs of this proceeding. The People **SHALL** file a statement of costs **on or before February 18, 2016.** Any objection thereto **MUST** be filed within seven days.

---

**31.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.